## CORBETT vs. CLARK and another.

BILL OF EXCHANGE: *(1) What constitutes. (2, 3) When acceptance absolute, and liability not limited to particular fund.*

A. and B., cultivating on shares the farm of M. and N., partners, gave X. (to whom A. and B. were indebted) an instrument in writing addressed to M. and N., requesting them to pay a certain sum of money to X., "and take the same out of our share of the grain," meaning the grain then harvested or growing on said farm; and M. and N. wrote the words "Order accepted" on the back of the instrument, with their firm name signed thereto. In an action by X. against M. and N.: *Held,*

1. That the instrument, though without words of negotiability, is a valid bill of exchange.
2. That the order and acceptance are *absolute;* the words above quoted from the order not limiting its payment to a particular fund, or making it conditional, but merely indicating the means by which the drawees might reimburse themselves.
3. That the drawees cannot defend against the legal effect of the bill and acceptance, on the ground that, before such acceptance, they had already made advances to the drawers, solely on the faith of the share of grain belonging to the latter, more than sufficient to cover its full value, and that the facts were known to X. at the time of such acceptance.

APPEAL from the Circuit Court for *Fond du Lac* County.

The defendants appealed from a judgment rendered against them. The instrument upon which the action was brought, and the facts relied on as a defense, will sufficiently appear from the opinion.

For the appellants, there was a brief by *Shepard & Shepard,*

and oral argument by *Chas. E. Shepard*. They contended, among other things, 1. That the instrument in question was not negotiable: (1) Because it did not run to the order of any one, or to bearer. *Gerard v. La Coste*, 1 Dal., 194; 1 Am. L. C. (3d ed.), 321-2; *Carruth v. Walker*, 8 Wis., 252. (2) Because it was a request to pay, not absolutely and in any event, but out of a particular fund designated. *Munger v. Shannon*, 61 N. Y., 251; *Cook v. Satterlee*, 6 Cow., 108; 1 Am. L. C., 317-18. 2. That nonnegotiable instruments are subject to the defense that there was nothing due the payee at the time when notice of the transfer came to the maker. 1 Parsons on N. &. B., 14, 15; 2 id., 44-47. 3. That the acceptance was in law conditional, the order itself being so. 1 Parsons on N. & B., 304; *Atkinson v. Manks*, 1 Cow., 691.

*Geo. P. Knowles*, for respondent, argued that the instrument in question was a negotiable bill of exchange, being for the payment of money only, giving the drawer a personal and certain credit, not confined to any particular fund, and being payable absolutely and at all events. Kyd on Bills, 50-55; Chitty on Bills, 132-4; *Corbitt v. Stonemetz*, 15 Wis., 170; 24 id., 607. The words "and take the same out of our share of the grain" are mere direction or advice as to how the acceptor may reimburse himself. Edwards on Bills, 162-3; Chitty on Bills, 126; Story on Bills, § 65; 1 Phillips on Neg. Ins., 1-40; 1 Hill, 11; *Kelley v. Mayor*, 4 id., 265, 442; 23 N. Y., 570; *Bank of Ky. v. Sanders*, 3 Marsh., 184; *Redman v. Adams*, 51 Me., 433; *Macleed v. Snee*, 2 Strange, 762; 3 Mod., 400; 10 id., 294; *Haussoullier v. Hartsinck*, 7 Term, 733.

ORTON, J. This action is brought by the payee, the respondent, against the drawees, the appellants, upon the following instrument:

"GREENBUSH, Wis., *Sept. 20, 1875*.

"Mr. I. B. CLARK & Co. — Please pay *C. A. Corbett* one hundred and eighty-three dollars and 90-100, and take the same out of our share of the grain."

On the same day, the drawees wrote upon the back of this

order the words, " Order accepted," and signed the same, by their firm name of " *Clark & Thorp.*"

This acceptance in itself is unqualified and absolute, but of course it must be held to be subject to any qualifications or conditions, if any, which appear upon the face of the order; and it is contended by the learned counsel of the appellants, that the words, " and take the same out of our share of the grain," qualify the acceptance and make the order payable out of a distinct and specified fund, and conditional upon the sufficiency of such fund. These words, without explanation, are meaningless; but, to give the appellants the full benefit of their explanation by the facts set up in their answer and found by the circuit court, it may be said that the appellants had rented to the drawers of said order two farms, and, by the terms of the lease, each party was to have one-half of the produce raised upon said farms for the years 1875 and 1876, and the appellants were to have a lien upon the share of the lessees for any advances made or credits allowed by the appellants to them, or debts incurred to the appellants by them, in and by the working of the farms, and for seed and certain fall plowing. The drawers of the order had gone into possession of the farms; and when the order was drawn, the produce of the same was either harvested or growing, and they had no other means to pay their debts except their share of the same, besides which they were insolvent. The appellants, at the date of the order, had claims against the drawers' share of the produce, according to the terms of the lease, of an uncertain amount, but probably considerably less than said share, and had also become the holders of a certain chattel mortgage upon the half share of the half share of the said drawers, belonging to one of said drawers to secure his individual note for $323, besides interest, to become due December 28, 1875; which mortgage also covered some other property.

It is claimed by the appellants that their advances under said lease, together with the said note and mortgage, more than covered the entire amount of said half share of the produce

raised upon said farms for the year 1875, and that the respond-
ent, the payee of said order, had knowledge of these facts, and
that the words in the order, "take the same out of our share of
the grain," mean said share already anticipated and absorbed by
these other claims.

This bill is not drawn with words of negotiability, but "it
is not essential to the validity of a bill of exchange that it
should be made payable to order, or bearer, or have the words,
"value received.'" *Mehlberg v. Tisher*, 24 Wis., 607. This
order, then, has all the essential elements of a bill of ex-
change, unless the above words make it payable out of a par-
ticular fund and conditionally, and qualify the acceptance.

We do not think they can have this effect, even with the
explanation given in the answer and finding. This question
must be determined by the rule, that if these or similar words
are used " merely to designate the fund out of which the ac-
ceptor may reimburse himself," or " as mere reference in the
draft to the fund, to call the attention of the drawee to his
means of reimbursement," then the order and acceptance are
absolute and unconditional; but if they are used to limit the
payment, or make the order payable only out of a particular
fund, or conditionally, or upon a contingency, then the order
is not a bill of exchange, and the acceptance *alone* is not a
sufficient cause of action, even between the original parties.
Story's Bills of Ex., § 40.

Perhaps a better test as to whether an order with such or
similar words is a bill of exchange, is found under the above
reference. "The general rule is, that a bill of exchange al-
ways implies a personal general credit, not limited or appli-
cable to particular circumstances and events which can not be
known to the holder of the bill in the general course of its
negotiation." The vague and by themselves meaningless
words here used, as we shall see, cannot affect the original
payee after an unqualified acceptance; much less would they
affect subsequent holders of the bill chargeable *only* with notice
of the words themselves.

By the above test there would seem to be no question that this order is to be treated as an unconditional and absolute bill of exchange.

Where the words in the body of the order are obscure, ambiguous or uncertain, and it may be doubtful whether they should be construed to make the payment conditional, contingent or limited by a particular fund, or as a mere direction as to the fund out of which the drawee may be reimbursed, there it would seem to be the duty of the drawee, in his acceptance, to clearly express such a condition or qualification. *Sproat v. Matthews*, 1 Term R., 182; Story's Bills of Ex., § 240. But by the authorities, which are from cases nearly parallel, there can be no doubt that this instrument should be classed as a bill of exchange. In *Redman v. Adams*, 51 Maine, 433, the words of the clause were, " and charge the same against whatever amount may be due me for my share of fish caught on board schooner ' Morning Star,' for the following year, 1860." The acceptance was general; and the court held that " this was a mere reference to the fund in the draft, to call the attention of the drawee to his means of reimbursement," and that the " payment of the order was not made to depend upon his having any share of the fish, nor was the call limited to the proceeds thereof." In *Macleed v. Snee*, 2 Strange, 762, the order was, " Pay £9 19s as my quarterly half pay to be due from 24th of June to 27th of September next by advance; " and the court says: " The mention of the half pay is only by way of direction how he shall reimburse himself, but the money is still to be advanced on the credit of the person;" and the court distinguishes such a case from *Josselyn v. Lacier*, 10 Mod., 294, and *Jenney v. Herle*, 1 Strange, 591, where the orders were drawn upon particular and uncertain funds, and no personal credit is given to the drawer. In *Haussoullier v. Hartsinck*, 7 Term R., 733, the words in the note were, " being a portion of value as under, deposited in security for the payment hereof," and the collateral was appended to the note; and it was held the note was payable at all events,

and that the payment, when made, was to be carried to a particular account.

Where the clause merely indicates the account to which the transaction is to be carried, or the fund from which the drawee is to reimburse himself, and the acceptance is general, it does not affect the validity of the order as a bill of exchange. *Kelley v. Mayor, etc., of Brooklyn*, 4 Hill, 263; *Early v. McCart*, 2 Dana, 414. In *Spurgin v. McPheeters*, 42 Ind., 527, the order was: "Pay to Jesse McPheeters or order the sum of one hundred and nineteen dollars, *on said bill of 1 3-4 in. lumber*, and oblige," etc. The answer set up that the order was given for past indebtedness; that the drawers were insolvent; that the drawee had a contract with the drawers for the delivery of 1½ inch lumber on the cars, and to be paid for when 30,000 feet of such lumber was so delivered, and not till then; that said lumber had not been so delivered; that the order was drawn and accepted with reference to said contract; and that all the facts were within the knowledge of the payee at the time of the acceptance, and it was understood at the time that the order was not to be paid until the performance of said contract. The acceptance was simply, " I accept." The action was by the payee against the acceptor. On demurrer to the answer, it was held that, the acceptance being general, it could not be contradicted or explained by a contemporaneous verbal agreement; that the consideration of the bill could not be inquired into as between the acceptor and the payee; and that showing that it was given for an antecedent debt, or as an accommodation, was no defense. In *Sylvester v. Staples*, 44 Maine, 496, the order was, " Pay Ansel T. Sylvester fifty-five dollars *for work done on logs*," etc. The acceptance was, " I accept the written order, *to pay when due*." On the trial of the action, by the payee against the acceptor, the defendant offered to show by parol evidence that the words " to pay when due" were understood by the parties and agreed to mean, when the acceptor should have funds in his hands belonging to the drawer, " for work done on logs," and that at the time of the acceptance there was nothing so

due, and had not since been due; and the offer was refused, and the evidence rejected, on the ground that the acceptance was general, and the words could have no other construction than to mean to pay when the *order* was due, or at the maturity of the order, and that parol evidence was not admissible to contradict or explain either the order or acceptance. The objection was made that the order had no words of negotiability, as in this case, and was therefore no bill of exchange, and that it was open to explanation and defenses of this character. It was held that the order was a bill of exchange, and that the exclusion of the evidence offered to show any contemporaneous agreement between the parties contradicting or varying the terms of the order or the acceptance was correct, and that the words of the acceptance must be taken most strongly against the acceptor.

In addition to the elementary principles and first impressions based upon the reason supporting such principles in application to this peculiar form of order, I have referred to the foregoing cases, which appear to be very much in point, and given to them considerable space, because these peculiar clauses in orders and acceptances, though various in language, are often closely similar in significance, and make very close cases, and present great difficulty in determining, in any given case, whether the order is a bill of exchange and its acceptance absolute or conditional.

The learned counsel of the appellants have cited several cases which they most ingeniously claim to be applicable to this case, and to show by authority that this acceptance is payable out of a particular fund, and conditional, and therefore no bill of exchange.

In *Gerard v. La Coste*, 1 Dall., 194, it is held that the order in that case, not having words of negotiability, was not assignable so as to allow the holder to sue upon it; but it is also held that it was a bill of exchange, and, when accepted, bound all parties to it absolutely. In *Cook v. Saterlee*, 6 Cow., 108, the order was upon the drawee to pay and take up the note of the drawer in the possession of the payee; and it was

held that it was not a bill of exchange, but a mere engagement, and in declaring upon it the payee must show performance. In *Atkinson v. Manks*, 1 Cow., 691, the order was drawn for the delivery of goods in the hands of the drawee, and of course was no bill of exchange.

The order in *Jackman v. Bowker*, 4 Met., 235, was upon the drawee to pay an uncertain amount, to be ascertained upon a final settlement with the payee, and out of an uncertain fund in the hands of the drawee, and therefore no bill of exchange.

The case of *Munger v. Shannon*, 61 N. Y., 251, claimed to be especially in point, is essentially different from this case. The fund was in the hands and under the joint control of the drawer and drawee as copartners, and the order was drawn upon the drawer's share of the profits of the partnership business, which could not be ascertained without accounting and settlement.

But whether this order was strictly a bill of exchange or not, this defense is not available against an absolute and general acceptance.

In *Maber v. Massias*, 2 Wm. Blackstone, 1072, the order was for money, the product of the drawers' goods in the hands of the drawee, after discharging present acceptances, and the acceptance was general; and it was held that the acceptor could not defend on the ground of balances due him from the drawers, when his acceptance was general and unconditional; and the court said: "But, having accepted it generally in the terms of the draft, that is, subject to prior acceptances, he shall not shelter himself by this concealed balance due to himself in the course of a running account." The same equitable principle is recognized and enforced in the case of *Weston v. Barker*, 12 Johns., 276, where the defendant was assignee of certain funds in trust for the payment of specified indebtedness of the assignor, *and to hold the balance subject to his order*, which order was given to the plaintiff. It was held that the acceptor of such a trust, and by it the acceptor of the order, could not set off against such order de-

mands against the assignor arising from other transactions in which the plaintiff had no concern. In *Kemble v. Lull*, 3 McLean, 272, where the order was for a certain sum of money, " if in funds," and there was a general acceptance, it was held that, after such a general acceptance, the acceptor could not allege a want of consideration, and that the acceptance was an undertaking to pay the amount of the order to the plaintiff. To the same effect is the case of *McMenomy v. Ferrers*, 3 Johns., 71.

The defense in effect is, that the appellants, when the order was given, had already anticipated and absorbed the entire share of the grain belonging to the drawers, by claims and demands against them, and that therefore there was no consideration to the order; and it places the appellants, the drawees and acceptors of the bill, in the attitude of knowing, when they accepted it, that they had no fund out of which it could be paid. This attitude most clearly shows that they accepted the bill upon the personal credit of the drawers alone, and not upon the credit of any fund, and as an accommodation to the drawers.

" It was no defense or bar, that the bill was known to the holder to be an accommodation bill as between the other parties, if he took it for value before due." Story's Bills of Ex., § 191.

By a proper construction of these words in the bill, and by the authorities, we are clearly of the opinion that this order is a valid bill of exchange, and is not payable out of a particular fund or conditionally, but absolutely, and that the words are used merely in reference to the means by which the appellants, the acceptors, might reimburse themselves for its payment, and that the defenses set up were unavailable.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.