LEMUEL NICHOLS *vs.* PAUL RUGGLES.

Penobscot. Opinion February 20, 1884.

*Replevin. Contract. Note. Record. Attaching creditor.*

</div>

In an action of replevin of the horse named in the following instrument by Lemuel Nichols against an attaching officer who attached the horse as the property of James Newcomb: "Bangor, Sept. 8, 1882. I, James Newcomb, of Carmel, Maine, bought of Lemuel Nichols, Bangor, Maine, one black horse, name Nig, 7 years old, for ($80.00) eighty dollars and interest on same until paid for, which I agree to pay out of my next quarter's mail pay, which becomes due Jan. 1, 1883, on route 184 from Carmel to Kenduskeag, which he

is now carrying. The above horse is to remain said Nichols' until fully paid for. James Newcomb." *Held;*

1. That the instrument should have been recorded under the provisions of R. S., c. 111, § 5.

2. That the instrument contains a note given for personal property bargained and delivered, payable absolutely for a fixed sum in money.

ON REPORT.

Replevin of a horse brought against a constable who had attached it as the property of James Newcomb, on a writ in favor of Carnillus K. Johnson. The plaintiff claimed title under the instrument recited in the head note, as he had been paid no part of the purchase money. The paper was never recorded and Johnson knew nothing of it nor of the plaintiff's claim thereunder.

*John Varney*, for the plaintiff, contended that the instrument under which he claimed title to the horse was not a note within the meaning of R. S., c. 111, § 5; that the legislative expression there found must be held to mean what is legally and commercially known as a promissory note. Newcomb was under contract with Nichols to carry the mail, and was paid by Nichols ninety dollars and fifty cents a quarter and his agreement to pay for the horse was contingent upon receiving his compensation for mail service. It amounted to an agreement to pay for the horse in mail service.

Counsel cited *Morris* v. *Lynde*, 73 Maine, 88; *Bunker* v. *Athearn*, 35 Maine, 364.

*Wilson and Woodward*, for the defendant, cited: *Shaw* v. *Wilshire*, 65 Maine, 485; 1 Pars. Notes and Bills, 24, and cases cited, 31; *De Wolfe* v. *French*, 51 Maine, 420; *Redman* v. *Adams*, 51 Maine, 429; *Sears* v. *Wright*, 24 Maine, 278; *Crooker* v. *Holmes*, 65 Maine, 195.

DANFORTH, J. The only question presented by the report in this case is whether the instrument under which the plaintiff claims title to the horse replevied should have been recorded under R. S., c. 111, § 5. If so the plaintiff fails in his title and in his action.

The statute provides that, "No agreement that personal property bargained and delivered to another, for which a note is

given, shall remain the property of the payee till the note is paid, is valid, unless it is made and signed as a part of the note; nor when so made and signed in a note for more than thirty dollars, unless it is recorded like mortgages of personal property."

It is conceded that the instrument comes within the statute description in every respect except that it does not contain the note therein required. The objections are that the price to be paid was not payable in money and that its payment depended upon a contingency. But an examination will show that neither of these objections are well founded.

The statute uses the word "note" only, omitting the qualifying adjective "promissory," and whether the construction is to be so limited as to apply only to such promissory notes are recognized by the commercial law with all the requisites required by that law, may well be doubted. It is certain that the term "note" without the qualification is often used in a more extensive sense than with it, and it is equally certain that when used to express a promise to pay, whether in property or money, it is equally within the mischief to be prevented.

In this case, however, the promise is both absolute and to pay in money. There is no condition attached to it and the amount is fixed and definite. It is said that it is to be paid from a particular fund. This may be true; but it is evident that the intention of the parties was that its payment was not to be confined to that fund, but that it was to be paid whether the fund should fail or otherwise. Besides there is nothing in the instrument indicating any uncertainty or contingency as to the fund; and if there were it would not render the promise contingent. Story on Prom. Notes, § 26; *Byram* v. *Hunter*, 36 Maine, 217; *Redman* v. *Adams*, 51 Maine, 429. The fund is established by contract and is more than sufficient to pay the amount promised. The service by which it is to be produced was to be rendered by the promisor and if he fails to perform the service there can be no pretense that such failure would relieve him from the obligation of his promise which is unconditional in its terms. *Sears* v. *Wright*, 24 Maine, 278.

The promise is also to pay in money. The promise to per-

form the service under the contract for carrying the mail is one thing, that to pay for the horse another and a very different thing. The former is for service to be performed, the latter for a definite amount and no words to indicate that it is to be paid in any thing but money.

*Judgment for the defendant and for a return of the horse replevied.*

APPLETON, C. J., WALTON, BARROWS, PETERS and LIBBEY, JJ., concurred.