# Louisville Banking Co. v. Gray *et al.*

*Action upon a Promissory Note.*

1. *Commercial law; negotiability of note.*—The negotiability of a promissory note made payable to a bank, and which is in all other respects within the influence of the commercial law, is not destroyed by a stipulation therein which "authorizes said bank to appropriate on this note, whether due or not, at any time, at its option, without notice or legal proceedings, any money which they, or any one or more of them have jointly or severally in said bank on deposit or otherwise."

2. *Same; same.*—Such a stipulation in a promissory note does not render the date of payment uncertain, nor does it make the amount to be paid at maturity uncertain.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. JOHN MOORE.

This action was brought by the appellant, the Louisville Banking Company, against C. Crozier Gray and George Gray, and counted upon a promissory note which was given by the defendants to the Commercial Bank of Selma, and made payable at the Commercial Bank of Selma, on December 12, 1896, and which note was indorsed by the said Commercial Bank. of Selma, and was alleged in the complaint to be the property of the plaintiff.

The defendants filed several pleas, in which they set up payment of said note, and they also filed the following special plea: "No. 10. The defendants by leave of the court for further answer to the complaint in this cause say: That the promissory note sued on in this suit is in words and figures in substance as follows: '$500.00. Selma, Ala., Nov. 9th, 1896. On the 12th day of Dec. 1896, we promise to pay to the order of the Commercial Bank of Selma, Ala., the sum of five hundred and 00-100 dollars, at the Commercial Bank of Selma, Selma, Ala.—Due Dec. 15, 1896. The makers and endorsers of this note waive the right to claim exemption under the constitution and laws of this or any other State, and authorize said bank to appropriate on this note, whether due or not at any time, at its option, without notice or legal proceedings, any money which they or any one or more of them may have jointly or severally in said bank on deposit or otherwise; and further agree to pay all costs of collection including a reasonable attorney's fee upon failure to pay said note at maturity. Demand, protest and notice of dishonor and all other requirements to hold them are hereby waived by the endorsers of this note. [Signed.] C. Crozier Gray. George Gray.'

"And defendants aver that before the commencement of this suit they paid said note to said Commercial Bank of Selma, Ala., without notice that the plaintiff held or owned said note and without notice that said Commercial Bank of Selma did not hold or own the same, and they aver that when they so paid said note the same was due."

There were demurrers interposed to several of the defendant's special pleas, which demurrers were sus-

tained, and it is, therefore, unnecessary to set them out in detail. The plaintiff demurred to the defendant's 10th plea, upon the following grounds: 1st. It appears from said plea that said note is commercial paper and governed by the commercial law. 2d. That it does not appear from said plea that the plaintiff is bound by payment to the Commercial Bank of Selma. 3d. That it does not appear from said plea that said Commercial Bank of Selma held or owned said note at the time of payment. The demurrer to the 10th plea was overruled. To this ruling the plaintiff duly excepted.

On the trial of the cause, the note sued on was introduced in evidence. It was shown by the evidence for the defendant that after the transfer of the note to the plaintiff, the defendants had paid the amount of the note to the Commercial Bank of Selma, while said note was in the hands of the plaintiff; and that at the time of said payment, neither of the defendants had any notice that said note was not owned by the Commercial Bank of Selma, or that it was held by the plaintiff.

The court refused to give the general affirmative charge requested by the plaintiff, and to the refusal to give said charge the plaintiff duly excepted. There were verdict and judgment for the defendants. The plaintiff appeals, and assigns as error the overruling of the demurrer to the defendant's 10th plea, and the refusal to give the general affirmative charge requested by the plaintiff.

SATTERFIELD & YOUNG, for appellant.—The demurrer to the 10th plea should have been overruled. The note has all lthe requisites of a negotiable instrument. Its negotiability is not destroyed by the provision which authorizes the "Bank to aprpopriate on this note, whether due or not, at any time, at its option, without notice or legal proceedings, any money which they (the makers and indorsers) or any one or more of them have jointly or severally in said bank on deposit or otherwise.—Daniel on Negotiable Instruments, §§ 41, 43, 44, 45, 47, 48; 4 Amer. & Eng. Encyc. of Law, (2d edition), 90; *Sagory v. Met. Bank,* 42 La. Ann. 627; *Seymour v. Farquhar,* 93 Ala. 292.

MALLORY, McLEOD & MALLORY, *contra.*—The court properly overruled the demurrer to the 10th plea.   Said plea set up a complete defense to the maintenance of the suit upon the note in controversy.   The stipulation contained in said note authorizing the bank to appropriate any money which the makers or indorsers of said note may have had on deposit with it, destroyed the negotiability of the note, in that it rendered the time of the payment of said note uncertain and the amount due on the note at maturity uncertain.—*Com. Bank v. Crenshaw,* 103 Ala. 497; *Anniston L. & T. Co. v. Stickney,* 108 Ala. 146; *Cit. Nat. Bank v. Piollet,* 12 Amer. St. Rep. 860; *Overton v. Tyler,* 45 Amer. Dec. 645; *Woods v. North,* 24 Amer. Rep. 201; Randolph on Commercial Paper, § 104; 1 Daniel on Neg. Instru., § 56.

TYSON, J.—The single question presented for decision is whether the clause "and authorizes said bank to appropriate on this note, whether due or not, at any time, at its option, without notice or legal proceedings, any money which they or any one or more of them have jointly or severally in said bank on deposit or otherwise," destroys the negotiability of the note.   The note sued upon was a promise in writing to pay five hundred dollars to the Commercial Bank of Selma on the 12th day of December, 1896, "due Dec. 15, 1896, at the Commercial Bank of Selma, Ala.," and endorsed by the bank to the plaintiff.

The essentials of every promissory note are (1) it must be in writing and signed by the maker.   (2)   It must contain a certain promise to pay.   (3) The fact of payment must be certain.   (4)   The amount to be paid must be certain.   (5) The medium of payment must be money, and money only.   (6)   It must be delivered; and to make it a commercial paper, under our statute, it must be payable at a bank or private banking house, or a certain place of payment therein designated. Code, § 869; 1 Daniel on Neg. Inst., §§ 27-63.

The only difference between the ordinary promissory note and the commercial promissory note is the one made by the statute.   The latter must have a designated place of payment named in it.   There can be no ques-

tion that the note under consideration as to a designated place of payment contains this statutory requisite. The contention is, that the clause quoted above renders the date of payment uncertain or the amount uncertain to be paid at the maturity of the note. If either of these contentions should prevail it not only destroys the negotiability of the note as commercial paper but would destroy its character as a promissory note, leaving it nothing more than a simple contract to pay money, and of course subject to all defenses by the maker.

The only one of these contentions that is at all plausible is the one that the clause renders the note uncertain as to the date of payment.

The makers at all events obligated themselves to pay five hundred dollars. That was the amount named in the paper they were to pay, whether the payment was made at maturity or whether the bank exercised its option to appropriate any funds in its possession to its payment *pro tanto* or in full. The clause provided for no reduction in the sum to be paid, in the event of the appropriation by the bank before the day fixed for its maturity. Had the appropriation been made by the bank the next day after the delivery of the note and the funds so appropriated been five hundred dollars, the amount of the note, the makers could not have demanded a diminution on account of interest or otherwise, nor would the bank have been liable to them or either of them for a misappropriation of funds.

But it is said the bank had the right to apply any sum less than the full amount of the note, and had it exercised this right before its maturity, would render uncertain the amount due by the makers at the maturity of the note. We must confess our inability to comprehend how a sum certain deducted from a sum certain, could produce an uncertain sum. It is needless to say that it is a matter of simple arithmetical subtraction.

It is said, further, had such an appropriation been made by the bank before its maturity so as to entitle the maker to a credit upon the note of a partial payment, the bank was not bound to evidence such pay-

ment by endorsement upon the note, and therefore the bank could have negotiated the note to the plaintiffs in due course of trade for value without notice of such partial payment, before maturity. Though this would have been a palpable fraud, had the bank done so, and we may confess that it had the power to commit it, yet how does this fact affect the validity or negotiability of the note? The power was reposed by the makers, and unless the clause itself renders the sum agreed by them in the note to be paid uncertain, certainly no misconduct or fraud of the payee after the delivery of the note unless expressed in writing upon it so as to carry notice to a purchaser of such misconduct or fraud could affect his title if he paid value for it before its maturity. The purchaser would have the right to presume, unless the sum appropriated by the bank, and it is not contended in this case that the bank made any appropriation whatever, was endorsed somewhere upon the note, that none had been made by the bank; and that the full amount of the note was owing by the makers. And this is bound to be true upon the plainest principles that "fraud is never presumed." But had the plaintiff, which it was not bound to do, made the inquiry of the bank at the time of its purchase of the note, if it had appropriated either of the makers' money to the debt evidenced by the note in suit, the only truthful information that could have been imparted, under the facts of this case, would have been, it had not done so. We will not pursue the inquiry into this phase of the case further, but will now discuss the other suggestion: Did the clause in the note render the note uncertain as to its date of payment?

It will be observed that there was no obligation imposed upon the makers to pay before Dec. 15th, 1896, the date fixed for the maturity of the note. No action could have been maintained upon it by the payee or the holder against them until after the latter date above named. Nor had they the right to mature the note earlier than that date, nor to make partial payments upon it; nor could they have compelled the holder to accept the full payment of it before maturity. It would have required the consent of the holder for them

to do any one or all of these things. The clause imposed no obligation upon the bank to apply money deposited by both or either of the makers to the satisfaction of the note *pro tanto* or in full while it was its property. It was a mere option which it could have exercised or not at its pleasure. Had the makers or either of them placed upon deposit in the bank or otherwise in its custody or possession the next day after the execution of the note and permitted it to remain until its maturity treble the sum of money which they had stipulated in the note to pay, yea, an hundred times this sum, the bank was under no legal duty to apply any portion of it. A similar provision in a note and involving the principle here announced was passed upon by the Supreme Court of New York in the case of *Hodges v. Shuler*, 22 N. Y. 114. This provision was, following an unconditional promise by a railroad company to pay $1,000 with interest thereon, payable semiannually, as per interest warrants hereto attached as the same shall become due, in four years after date, "or upon the surrender of this note, together with the interest warrants not due to the treasurer, at any time until six months of its maturity, he shall issue to the holder thereof ten shares in the capital stock in said company in exchange therefor, in which case interest shall be paid to the date to which a dividend of profits shall have been previously declared, the holder not being entitled to both interest and accruing profits during the same period." The court said: "The instrument on which the action was brought has all the essential qualities of a negotiable promissory note. It is for the unconditional payment of a certain sum of money, at a specified time, to the payee's order. It is not an agreement in the alternative, to pay in money or railroad stock. It was not optional with the makers to pay in money or stock and thus fulfill their promise in either of two specified ways: in such a case, the promise would have been in the alternative. The possibility seems to have been contemplated that the owner of the note might, before its maturity, surrender it in exchange for stock, thus cancelling it and its money promise: but that promise was nevertheless absolute and uncon-

ditional and was as lasting as the note itself. In no event could the holder require money and stock. It was only upon the surrender of the note that he was to recover stock: and the money payment did not mature until six months after the holder's right to exchange the note for stock had expired. We are of the opinion that the instrument wants none of the essential requisites of a negotiable promissory note. It was an absolute and unconditional engagement to pay money on a day specified; and although an election was given to the promisees, upon a surrender of the instrument six months before its maturity, to exchange it for stock, this did not alter its character or make the promise in the alternative, in the sense in which that word is used respecting promises to pay. The engagement of the railroad company was to pay the sum of $1,000 in four years from date and its promise could only be fulfilled by the payment of the money, at the day named."

The courts have gone very far in sustaining the character and negotiability of promissory notes; and very properly so, when it appears from the instrument that it was the intention of the parties to execute a note and not a mere contract for the payment of money. For apt illustrations to what length they have gone in this direction see 1 Daniel on Neg. Inst. §§ 41, 43, 44 and 45 and notes; 1 Rand. Com. Paper, §§ 110 and 111 and notes; Justice McClellan's opinion in *Commercial Bank of Selma v. Crenshaw*, 103 Ala. 497, and authorities there cited. Our opinion is that the instrument sued upon was a commercial promissory note.

The court committed an error in not sustaining the demurrer to the tenth plea of the defendants. The judgment is reversed and the cause remanded.

Reversed and remanded.