[No. 9715. Department Two. December 26, 1911.]

FIRST NATIONAL BANK OF SNOHOMISH, *Respondent*, v.
J. E. SULLIVAN *et al., Appellants.*[1]

BILLS AND NOTES—NEGOTIABILITY—AGREEMENT TO APPLY PROCEEDS OF SALE. A promissory note for a specified sum payable on demand is not made conditional as to amount or uncertain as to time, so as to be nonnegotiable, within the definition of Rem. & Bal. Code, § 3392, by the addition of a provision that this note is given to take up the freight and rehandling of a certain car and proceeds from resale of car to apply on the note; since, construing all of the terms of the note together, the agreement does not make the note payable only out of the proceeds of the resale of the car, but was

[1]Reported in 119 Pac. 820.

to apply proceeds in case of a resale before demand, and to reimburse the makers in case of resale after demand.

BILLS AND NOTES—NEGOTIABILITY—CONDITIONS. Rem. & Bal. Code, § 3394, defining an unconditional promise to pay as one which designates a particular fund out of which reimbursement is to be made, but not to pay only out of a particular fund, is but declaratory of the common law, and a note is negotiable if the general credit of the maker accompanies the note.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered November 21, 1910, upon findings in favor of the plaintiff, in an action upon a promissory note, after a trial before the court without a jury. Affirmed.

*G. W. Hinman,* for appellants.

*Coleman, Fogarty & Anderson,* for respondent.

ELLIS, J.—The respondent, as endorsee and holder, sued the appellants as makers of a promissory note which, with the endorsements thereon, was as follows:

"$400. Snohomish, Wash., Apr. 25, 1908.

"On demand, after date, for value received I (we) promise to pay to the order of Springfield Shingle Co. at the First National Bank in the city of Snohomish, the sum of Four hundred no-100 Dollars with interest thereon at the rate of 8 per cent per annum from date until paid. The interest shall be paid at the expiration of every.......... and if default be made in the payment of any installment of interest when .the same shall become due, then the whole of this note, both principal and interest, shall forthwith become due and payable without demand. Both principal and interest payable in United States Gold Coin of the present standard of weight and fineness. If suit shall be commenced for the recovery of any amount due upon this note, I agree to pay a counsel fee of ........ per cent, upon the amount which may be found due, and the whole of the judgment in such suit including attorney's fees and costs of suit, shall bear interest at the rate of ........ per cent per annum from its date until paid, and it may be so provided in said judgment.

"The maker and all endorsers hereof, and each and every party to this note severally waive presentation and demand for payment, protest and notice of protest, and notice of nonpayment of this note.

"This note is given to take up the freight and rehandling of N. P. Car 43607 and proceeds from resale of said car shall apply on this note."

Sullivan Bros.
By H. W. Sullivan,
H. J. Sullivan.

Endorsed:

"No. 22438.
    "Springfield Shingle Co.,
        "By H. E. Gampp, Sec'y.
"Paid on Acc't Nov. 17, 1908, $200.00.
"Interest paid to Dec. 25, 1908, $19.69."

The answer admitted the excution of the note, the payment of the amounts endorsed thereon, denied that there was any balance due, and set up an affirmative defense in the nature of a counterclaim to the effect that, prior to the making of the note, the appellants sold to the Springfield Shingle Company, payee, certain shingles under an agreement that they were to receive from that company $62\frac{1}{2}$ cents for every 100 pounds of underweight, and were to pay to the shingle company a like amount per hundred for overweights. There was a further allegation that the underweights exceeded the overweights by $537.34 which amount has never been paid by the Springfield Shingle Company to the appellants. The cause was tried to the court without a jury. The court, holding that the note was negotiable, refused to admit evidence in support of the counterclaim; and upon sufficient findings of fact and conclusions of law, entered judgment in favor of the respondent. From that judgment, this appeal was prosecuted.

The only question presented for our consideration is that of the negotiability or nonnegotiability of the note. The first section of the negotiable instruments act (Laws 1899,

p. 340, § 1; Rem. & Bal. Code, § 3392), defining such instruments contains the following:

"An instrument to be negotiable must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer; (2) Must contain an unconditional promise or order to pay a sum certain in money; (3) Must be payable on demand, or at a fixed or determinable future time; (4) Must be payable to order or to bearer."

The note here in question obviously conforms to this definition, unless it is made conditional as to amount or uncertain as to time by the following sentence: "This note is given to take up the freight and rehandling of N. P. car 43,607 and proceeds from resale of said car shall apply on this note." It is clear that the note, exclusive of this sentence, is not obnoxious to the definition in either of these particulars. It was payable on demand, thus falling within the very terms of the statutory definition as to time of payment. Giving to the words of the above quoted sentence their natural and ordinary significance it cannot be held to make the note payable otherwise than on demand. They do not stipulate, either expressly or by any implication, necessary or otherwise, that the note shall be payable only out of the proceeds of the resale of the car of shingles. Nor do they make the payment contingent upon or subject to a resale. There is no provision that demand shall be postponed to a resale.

This note, like every other written instrument, must be construed as a whole so as to give effect to every part of it, if possible. This can only be done by holding the whole amount due and payable on demand, and that the proceeds of the sale of the shingles, in case of a resale before demand, shall be applied on the amount, but in case of resale after demand the proceeds shall go to reimburse *pro tanto* the makers of the note. This gives effect to every word in the note and makes it an absolute promise to pay on demand with the designation of a fund to reimburse the maker for

such payment. Any other construction would be to ignore the words "on demand" and arbitrarily substitute in the last sentence the words "payable only out of" for the actual words "shall apply on." These terms are by no means synonymous.

If, as seems inevitable, this note must be construed as payable on demand, it follows that there can be no uncertainty as to the amount. Payment is not made dependent upon the sufficiency of the proceeds of the resale. If demand be made for the payment of such a note immediately after delivery the promise is to pay the full amount. If demand be made after a resale of the shingles, the promise still is to pay the full amount, the proceeds of the shingles to be applied on that amount. If so applied, such application, in the nature of the thing, can have no other or different effect on the promise to pay or upon the amount to be paid than any other partial payment. The promise is still, and from the beginning was, an unconditional promise in writing to pay to order of the payee, and in any event, a sum certain on demand. This meets every requirement of the statutory definition of a negotiable instrument.

The third section of the negotiable instrument act (Rem. & Bal. Code, § 3394), defines an unconditional promise as follows:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with: (1) An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or (2) A statement of the transaction which gives rise to the instrument. But an order or promise to pay only out of a particular fund is not unconditional."

This section is held but declaratory of the common law. Slover, Negotiable Instruments, p. 50; *First Nat. Bank of Hutchinson v. Lightner*, 74 Kan. 736, 88 Pac. 59, 118 Am. St. 353, 8 L. R. A. (N. S.) 231. The reference to the consideration of the note, and the direction to apply the pro-

ceeds of the resale of the shingles thereon, must, therefore, be construed in the same manner, and as having the same effect as under the law merchant at common law. The true test in every case is, and was at common law, does the general credit of the maker accompany the instrument? If it does, the note is negotiable, otherwise it is not. 4 Am. & Eng. Ency. Law (2d ed.), p. 89.

In an early case, *Haussoullier v. Hartsinck*, 7 Durnf. & East 733, decided by the Court of King's Bench in 1798, the note read as follows:

"No. 300.    Original Security Bank London No. 300.
    "35 Cornhill.    This 7th day of September 1797.
£25.    On the 19th day of November next and after that date on demand we promise to pay to .............. or bearer £25, being a portion of a value as under deposited in security for the payment hereof, according to the receipt in our hands.                    Hartsinck and Co."

The ground of defense was the same as here, and is reported as follows:

"That the notes were not payable at all events, but payable out of a particular fund alluded to in the notes, in case that fund should be sufficient. That the sum secured by one of them was described as 'a portion of a value as,' &c. in terms pointing out the fund out of which it was to be paid. That the payee was of course to resort to that fund and not to the maker at all events.

"But [continues the report] the court said they were clearly of opinion that, though as between the original parties to the transaction, the payment of the notes was to be carried to a particular amount, the defendants were liable on these notes which were payable at all events."

It cannot fail to be noted that the language used in the note in that case was much more capable of the construction contended for than that of the note before us. In *Walker v. Woollen*, 54 Ind. 164, 23 Am. Rep. 639, a note reading "six months after date, or before, if made out of the sale of Drake's horse hay-fork and hay carrier, I promise to pay,"

etc. was held to be an absolute promise to pay, and the note was held negotiable. See, also, *Charlton v. Reed,* 61 Iowa 166, 16 N. W. 64, 47 Am. Rep. 808·; *Cota v. Buck,* 7 Met. (Mass.) 588, 41 Am. Dec. 464; *Ernst v. Steckman,* 74 Pa. St. 13, 15 Am. Rep. 542; *Hawley v. Bingham,* 6 Ore. 76; *Schmittler v. Simon,* 101 N. Y. 554, 5 N. E. 452, 54 Am. Rep. 737; *Redman v. Adams,* 51 Me. 429; *Whitney v. Eliot Nat. Bank,* 137 Mass. 351, 50 Am. Rep. 316; *Nichols v. Ruggles,* 76 Me. 25; *Louisville Banking Co. v. Gray,* 123 Ala. 251, 26 South. 205, 82 Am. St. 120; *Corbett v. Clark,* 45 Wis. 403, 30 Am. Rep. 763; *Joergenson v. Joergenson,* 28 Wash. 477, 68 Pac. 913, 92 Am. St. 888.

The negotiability of notes and drafts is favored in law, and whenever the promise can be held unconditional without doing violence to the ordinary meaning of the language used, it will be so held. 7 Cyc. 575 *et seq.* Following the decisive trend of authority, both ancient and modern, we hold the note here in question a negotiable instrument.

The judgment is affirmed.

CROW, CHADWICK, and MORRIS, JJ., concur.