(82 South. 498)

### SACRED HEART CHURCH BUILDING COMMITTEE et al. v. MANSON.
#### (6 Div. 562.)

(Supreme Court of Alabama.    May 15, 1919. Rehearing Denied June 30, 1919.)

1. BILLS AND NOTES ⟺133—CONSTRUCTION OF INSTRUMENT — CONSTRUCTION AS A WHOLE—INDORSEMENT.

Under the general rule requiring the whole of an instrument to be considered, it is necessary in construing an instrument in form of a note to consider a certain indorsement on the margin at the top relating to purpose and for what the instrument was given "as if it had been set forth in the body of the instrument."

2. BILLS AND NOTES ⟺144—NEGOTIABILITY —CONSTRUCTION OF TERMS AT EXECUTION.

The determination of the negotiability vel non of an instrument must depend upon a construction of its terms at the time of its execution and delivery, not subsequently.

3. BILLS AND NOTES ⟺164—NEGOTIABILITY — "CONDITIONAL PROMISE" — NEGOTIABLE INSTRUMENTS ACT—"REIMBURSE."

A promissory note to a bank, dated April 17, 1914, due April 17, 1915, bearing on the margin at the top the indorsement, "This note is given to reimburse" the bank "for certificate of deposit No. 1187 for $5,000 due April 17, 1915," in view of the term "reimburse," which means to refund or pay back, bears on its face a recital that it was given for the bank's promise to pay at a future time and not for money received, and renders the promise conditional within Negotiable Instruments Act, §

4960, and the note not negotiable under section 4958 et seq.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Promise; Words and Phrases, Reimburse.]

Sayre, Somerville, and Gardner, JJ., dissenting.

Appeal from Circuit Court, Cullman County; Robert C. Brickell, Judge.

Action by H. T. Manson against the Sacred Heart Church Building Committee and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Sample & Kilpatrick, of Cullman, for appellants.

George H. Parker, of Cullman, and Eyster & Eyster, of Albany, for appellee.

McCLELLAN, J. Action by appellee—as alleged innocent transferee (holder), for value, of a promissory note—against appellants; judgment being accorded plaintiff.

The instrument declared on is thus reproduced and described in the bill of exceptions:

"$5,000.00.        Cullman, Ala., April 17, 1914.

"April 17, 1915, days after date, we promise to pay to the order of German Bank of Cullman five thousand dollars, value received, with interest from date at 6 per cent. payable semiannually until paid.    Payable at the German Bank of Cullman, Ala.

"The makers and indorsers of this note hereby expressly waive all right to claim exemptions allowed by the Constitution and laws of this or any other state and agree to pay cost of collecting this note including reasonable attorneys fee for all services rendered in any way, in any suit against any maker or indorser, or in collecting or attempting to collect, or in securing or attempting to secure this debt, if this note is not paid at maturity.    Notice and protest on the nonpayment of this note is hereby waived by each maker and indorser. [Signed] Sacred Heart Building Committee. Rev. P. Ignatius, O. S. B., Pres.    Emil Kramer, Treasurer. No. 2994.    Date 2."

And on the margin at the top, on the face of this note, is indorsed:

"This note was given to reimburse the German Bank for Cert. of deposit No. 1187 for $5,000.00, due April 17, 1915."

On the back of this note is the following indorsement, to wit:

"J. H. Karter.    Jno. F. Beyer.    Emil Kramer.    William Richard.    Max Schmitt.    J. H. Voss.    H. C. Mages.    F. H. Hoelscher.    Joe Baier.    Avon Beister.    German Bank of Cullman, by Emil Kramer, Cashier."

Among the more important questions raised on the trial and presented by this appeal is whether the words indorsed on the face of the paper, in the "margin at the top," at the

time of execution prevented it from becoming a negotiable instrument within the purview of the Uniform Negotiable Instruments Act. Code 1907, § 4958 et seq., c. 115. A prerequisite to the constitution of a negotiable instrument is that it shall "contain an unconditional promise or order to pay a sum certain in money." Code, § 4958. According to the provisions of Code, § 4960, the promise to pay is not rendered *conditional*, within the contemplation of the section quoted, if there is in or on the instrument merely an *"indication* of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount," or, if there is in or on the instrument "a *statement* of the transaction which gives rise to the instrument"; but "an order or promise to pay out of a particular fund is not unconditional." (Italics supplied.) These statutes are held to be reiterations of the rules of the common law. 8 C. J. pp. 117, 118, 123, 124; Bank v. Sullivan, 66 Wash. 375, 119 Pac. 820, Ann. Cas. 1913C, 930; Blackman v. Lehman, 63 Ala. 547, 551, 35 Am. Rep. 57.

[1] Consistent with the applicable general rule requiring the "whole" of an instrument to be considered when construction is undertaken, it is certain that the matter indorsed on the face of this paper, "on the margin at the top," became a part of the instrument, as much so "as if it had been set forth in the body of the instrument." Seymour v. Farquhar, 93 Ala. 292, 8 South. 466; 1 Daniel on Neg. Instr. (5th Ed.) § 151; Polo v. Parr, 8 Neb. 379, 1 N. W. 312, 30 Am. Rep. 830; 7 Cyc. pp. 628, 631; exhaustive annotator's note to Kurth v. Bank, 127 Am. St. Rep. 432 et seq.; 8 C. J. pp. 85, 86, 191 et seq.; 3 R. C. L. tit. Bills and Notes, § 50, pp. 866–868.

[2] The contract as thus constituted is governed by the general rule that forbids the contradiction or variation of a written contract by parol evidence. Seymour v. Farquhar, 93 Ala. 292, 8 South. 466; 8 C. J. p. 85. Considering the instrument as a whole, just as if the marginal expression had been written in its body, the particular inquiry is whether the words written on its face, on the margin at the top, "This note was given to reimburse the German Bank for Cert. of deposit No. 1187 for $5,000.00, due April 17, 1915," operated to render conditional the promise to pay a certain sum of money.

The determination of the negotiability vel non of an instrument must depend upon a construction of its terms at the time of its execution and delivery, not subsequently. Blackman v. Lehman, 63 Ala. 547, 551, 35 Am. Rep. 57, where it was pertinently said:

"Its character depends upon its terms at the time it is made; and if it then purports a payment to be made upon a contingency, or a condition, or uncertain event, the subsequent happening of the event or contingency will not change it." Jennings v. Bank, 13 Colo. 417, 22 Pac. 777, 16 Am. St. Rep. 210, 213.

The present inquiry is the effect of the instrument, as a whole, on the day of its date and delivery, April 17, 1914.

[3] The instrument issued by the German Bank, to which reference was made in the words written on the margin of the paper sued on, is thus reproduced in the record:

"No. 1187. $5,000.00. German Bank of Cullman. Certificate of Deposit. Not subject to check. Cullman, Ala., April 17, 1914. Sacred Heart Church Building Committee have deposited in this bank five thousand dollars payable to the order of themselves on April 17, 1915, in current funds on the return of this certificate properly indorsed, after date, with interest at the rate of six per cent. per annum for the time specified only. No interest paid after maturity. Interest payable semiannually. Emil Kramer, Cashier. [German Bank of Cullman. Seal. Cullman, Alabama.]"

Though without influence upon the particular question of construction now being considered, we may state that this instrument, issued by the German Bank, was a negotiable instrument. 1 Morse on Banking (5th Ed.) § 51. It was, in fact, negotiated by the building committee and its members and officers with the Commonwealth Life Insurance Company, Louisville, Ky.; and on April 17, 1915, the loan, therewith negotiated by the committee, was paid in full by the committee to the insurance company.

It appears from the terms of the matter written on the margin of the paper sued on, in connection with the other terms in the instrument sued on: (a) That it was given on April 17, 1914, the same date which the "certificate of deposit" bore; (b) that the "certificate of deposit" was payable twelve months after the date common to both the instruments, viz., April 17, 1915; (c) that the amount named in both the instruments was the same, viz., $5,000; and (d) that the instrument sued on was given to reimburse the German Bank for the certificate of deposit designated. The result was that for the committee's written promise to pay the German Bank gave its promise to pay, maturing on a day and date coincident with the maturity of the written promise the bank received. The promises of each were coincident in inception and in amount and concurrent with respect to time of maturity. The certificate of deposit was, to all intents and purposes, a promissory note. 1 Morse, supra. The controlling word in the matter written on the margin of the paper in suit was "reimburse." This word carried, as if written in the body of the instrument, a meaning consistent with the connection in which it was used. In common parlance, reimburse means to refund, to pay back. The fact, apparent from the terms of the whole instrument, that the instrument sued on was executed to the bank, on the same date and maturing on the same date as the certificate, effected to refute the idea that an actual deposit of money was made with

the bank. If there had been an actual deposit of funds with the bank, there would, of course, have been no occasion or necessity to give the bank a promise to pay a sum equal to the amount deposited with the bank. If there had been an actual deposit, the promise of the bank would then have rested on the actual deposit, the receipt of the fund, which its certificate would have promised to repay to the beneficiary of the certificate of deposit. The instrument sued on, therefore, bore on its face the unmistakable recital that it was given for the bank's promise to pay at a future time, not for money received by the committee or its members from the bank; no deposit having been made. This was the interpretation put upon the instrument sued on, in this particular, by the Hanover National Bank, plaintiff's assignor—to which the German Bank sent the instrument sued on—in the Hanover Bank's letter of date June 3, 1914:

" * * * Besides, the memorandum at the top shows it is given in exchange for an *obligation* of your bank and does *not* represent borrowed money." (Italics supplied.)

When the word "reimburse," as used in the marginal expression, is interpreted in the light of the fact—shown on the face of the whole paper—that no money was received or deposited by the committee or its members, it becomes clear that the word (reimburse) was employed to convey the meaning to any reader of the instrument that the instrument sued on should serve as an obligatory promise to reimburse the bank in a future contingency. There could be no reimbursement of the German Bank until the German Bank had paid out something to be refunded, restored to it. The language employed did not import a promise to pay the sum stated, for the certificate of deposit did not signify a purchase of the certificate of deposit; but, and only, a promise to reimburse, to pay back, to restore—a condition that restricted the promise to restore that which, in value, the German Bank should part with. In these circumstances, read from the face of the instrument sued on, it is manifest that the promise to pay was conditional, contingent upon the event that the German Bank should pay out funds as the basis and substance of the promise to reimburse the German Bank. Had the German Bank retained the instrument sued on and had the German Bank declared on it as an unqualified promise to pay, a full defense would have been available in the effect of the terms written on the instrument, apart from the agreement between the parties, viz.: That the promise to pay was not unconditional; that the promise was to reimburse the German Bank, not to pay the German Bank for a negotiable instrument then bought by the committee, its members or its officers. Obviously, the contingency thus stipulated was not of a character that must, at all events, have happened. As a matter of subsequent fact, it did not happen; the proof in this record shows, indisputably, that those who gave the German Bank the instrument here sued on paid the Commonwealth Life Insurance Company their loan, to secure which the certificate of deposit was assigned, and that, at the trial, the certificate of deposit was in the possession of these defendants, appellants, who offered in their pleading to surrender it. It necessarily results from this interpretation of the instrument in suit that the particular marginal expression was not simply a "statement of the transaction which gives (gave) rise to the instrument." As thus construed, the language manifested expressed the promisors' purpose in the premises—not a recital, merely, of the transaction. The reference therein to the transaction operated to define the obligation assumed by the promisors; affected to express their intent to restore, to repay, rather than to pay as an original duty arising from a purchase of the subject of the reference. Investigation has disclosed no decision, one way or the other, in immediate point, involving terms like those vitally important in this instance. There is a measure of similarity between facts and circumstances in the case under consideration and those considered in Post v. Kinzua Ry. Co., 171 Pa. 615, 33 Atl. 362, where the instrument, held not to be negotiable, read:

"On the first day of July, 1891, without grace, there will be due to the American Car & Equipment Company or order two hundred and fifty dollars for rental of rolling stock, under contract of lease and conditional sale of even date herewith, payable at the office of the American Car & Equipment Company in the city of New York, with interest at 6 per cent. per annum added."

Affirming the nonnegotiability of this instrument, the court held that the obligation to pay was, on its face, contingent upon the delivery of the rolling stock "for rental" of which the instrument was given; this, notwithstanding the instrument bore no express condition to that effect, notwithstanding the terms of the "contract of lease and conditional sale of even date" therewith were not invoked to supply, expressly, any element of the condition adjudged as qualifying the instrument's otherwise unconditional obligation to pay—the court there suggesting the contingency, the possible failure of the promisee to deliver the rolling stock for which the rental was stipulated, whereupon the obligation to pay was regarded as being dependent.

When the marginal expression here involved is read into the body of the instrument, as must be done, it appears that the instrument considered in the Post Case, supra, pre-

sented a stronger opportunity, if not invitation, to read the pertinent matter as a mere recital of the transaction than does the case under consideration. There, as here, the construction taken by the court imported a purpose on the part of the promisor to restrict the promise, to subject its obligation to a contingency—not in express words, but clearly resultant from the terms employed.

Neither of our decisions in Goodwin v. McCoy, 13 Ala. 271, 280, 281, and Logan v. Hodges, 6 Ala. 699, bears upon the question under consideration. In the latter case it does not appear that the instrument in suit bore terms introducing the subject-matter of the condition upon which the defense was there rested. In the former (13 Ala. pp. 280, 281, it was observed that—

"The bill sued on and the four notes are given for the same consideration; the payment of one cancels and discharges the others."

Wherefrom the court deduced the conclusion that the provision in the receipt, given by McCoy (plaintiff) for a surrender of the acceptance of Thomas Haynes when the four notes were paid, introduced no contingency, being absolutely consistent with duty consequent upon the discharge of the debt.

First Nat. Bank v. Sullivan, 66 Wash. 375, 119 Pac. 820, Ann. Cas. 1913C, 930, is without application to this case. There the instrument was payable on demand, which fact—as Barnewall of counsel observed in Hartley v. Kilkinson, 4 Maule & Selwyn, 26—rendered impossible the intervention of a condition or contingency operative to qualify the promise to pay. In the Sullivan Case, supra, the expression was this:

"This note is given *to take up* the freight and rehandling of N. P. Car 43607 and proceeds from resale of said car shall apply on this note." (Italics supplied.)

These terms were fairly susceptible of this interpretation: That they disclosed the purpose and intent of the Sullivans "to take up," to pay, as it were, on demand the mentioned charges which the promisee, the shingle company, had laid out therefor. These terms imported no reference to a promise at a future time, much less a promise by the promisor to reimburse the promisee for an outlay to be made. The last phrase in the quoted matter, directing the application of the proceeds from the resale of the car, fell, of course, within the pertinent provision of Code, § 4960, with respect to cases where there is but an "indication" of the particular fund out of which payment should be made. The present instrument involves no such inquiry, it bearing no suggestion of an effort to indicate or to order payment out of a particular fund or the debiting of a particular account.

The decision in First Nat. Bank v. Lightner, 74 Kan. 736, 88 Pac. 59, 8 L. R. A. (N. S.)

231, 118 Am. St. Rep. 353, 11 Ann. Cas. 596, and others in that line, are likewise inapplicable here. There the question was whether payment had been ordered out of a particular account. Our case of Louisville Banking Co. v. Gray, 123 Ala. 251, 26 South. 205, 82 Am. St. Rep. 120, is to the like general effect, on a question not presented by the terms of the instrument now under consideration.

The trial court proceeded on the theory, and so ruled, that the instrument sued on was negotiable. It not being negotiable, the judgment is affected with fundamental error.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

SAYRE, SOMERVILLE, and GARDNER, JJ., dissent.

MAYFIELD, J. (concurring). I fully concur in the opinion of Justice McCLELLAN, and I am also fully convinced that the plaintiff was not a "holder in due course," if the note sued on was a negotiable one. As I read and understand the evidence, the New York bank expressly declined to accept the note "in due course of trade."

In addition to what is quoted by Justice McCLELLAN from the letter of the New York bank declining to accept the notes as collateral, the letter further pointed out the "infirmity of the instrument," which appeared on its face, and which, under subdivision 4 of section 5007 of the Code, prevented that bank from becoming a holder "in due course of trade." The bank or the officer thereof said in terms that it was not "business paper," and for that reason could not be accepted as such.

The only dispute or conflict in the evidence was as to whether the New York bank was holder at all of the note, but not as to whether it was holder in due course of trade.

SAYRE, J. (dissenting). The prevailing opinion shows the note in verbis. The most serious insistence of appellants from the beginning has been that the writing on the margin of the note at the top rendered it nonnegotiable. I have been unable to see that the writing referred to, viz., "This note was given to reimburse the German Bank for Cert. of deposit No. 1187 for $5,000.00, due April 17, 1915," restrained or qualified the indisputably unconditional contract evidenced by the body of the instrument.

"The true test in every case under the Negotiable Instruments Law, as well as at common law, is whether the general credit of the maker or drawee accompanies the instrument. If it does, the instrument is negotiable; otherwise it is not." 3 R. C. L. p. 885.

An unqualified order or promise to pay is unconditional within the meaning of the Negotiable Instruments Law, "though coupled with a statement of the transaction which gives rise to the instrument." Code, § 4960. This section of the statute is held to be declaratory of the common law. Hutchinson National Bank v. Lightner, 74 Kan. 736, 88 Pac. 59, 8 L. R. A. (N. S.) 231, 118 Am. St. Rep. 353, 11 Ann. Cas. 596. And in general, the negotiability of instruments is favored by the courts. 7 Cyc. 575, where our case of Goodwin v. McCoy, 13 Ala. 271, is cited. An application of these rules is seen in First Nat. Bank of Snohomish v. Sullivan, 66 Wash. 375, 119 Pac. 820, Ann. Cas. 1913C, 930, where it was held that a promissory note was not deprived of its commercial quality by its recital that—

"This note is given to take up the freight and rehandling of N. P. Car 43607 and proceeds from resale of said car shall apply to this note."

The court cited, among a good number of others, our case of Louisville Banking Co. v. Gray, 123 Ala. 251, 26 South. 205, 82 Am. St. Rep. 120. And in Chicago Railway Equipment Co. v. Merchants' National Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349. it was held that the negotiable character of a promissory note was not affected by a provision that it was given with others in payment for certain cars, the title to which should remain in the payee until all the notes of the series should be paid. The court said:

"The transaction is, in legal effect, what it would have been if the maker, who purchased the cars, had given a mortgage back to the payee, securing the notes on the property until they were all fully paid. The agreement, by which the vendor retains the title and by which the notes are secured on the cars, is collateral to the notes, and does not affect their negotiability. It does not qualify the promise to pay at the time fixed, any more than would be done by an agreement, of the same kind, embodied in a separate instrument, in the form of a mortgage."

And the court cited a number of cases which hold that where a note secured by a mortgage is transferred to a bona fide holder for value, and a bill is filed to foreclose the mortgage, no other or further defenses are allowed against the mortgage than would be allowed were the action brought in a court of law upon the note. Other cases to the same effect as the cases supra are cited in Crawford's Annotated Negotiable Instruments Law, p. 12. Post v. Kinzua Hemlock Railway Co., 171 Pa. 615, 33 Atl. 362, seems to be at variance with these authorities; but that case was decided long before the enactment of the Negotiable Instruments Law was adopted in this state, which, as has appeared, at this point followed the common law as it has been declared in this and other states and by the Supreme Court of the United States.

I concur fully in the proposition of the prevailing opinion, viz., the determination of the negotiability vel non of the instrument must depend upon a construction of its terms at the time of its execution and delivery, not upon what may happen subsequently. Therefore, passing upon the negotiability of this paper, I see no occasion to refer to what happened subsequent to its negotiation, and I am indifferent—properly so, I conceive—to the statement of the Hanover Bank to the effect that this paper did not represent borrowed money. There is no law that borrowed money alone may constitute the consideration of negotiable paper. Nor am I, though not lacking in sympathy for the parties who put this paper on the market, able to follow the argument which would make this promise to be conditional by reason of the use of the word "reimburse" used in the so-called indorsement of the note; for, I take it, every promissory note, negotiable or nonnegotiable, is given to reimburse somebody for something, it may be credit only. As it appears to me the indorsement here is nothing more than "a statement of the transaction which gives rise to the instrument"—such a statement as, according to the statute, does not render a promise to pay conditional.

I have examined also the other assignments of error in this cause, and while I have found in them no reason for a reversal, a statement of them would serve no purpose. My judgment is that appellants put a negotiable paper in the hands of the Bank of Cullman and have no sufficient answer to the claim of appellee, who stands in the place of a bona fide holder for value before maturity.

I think the judgment should be affirmed.

SOMERVILLE and GARDNER, JJ., concur in the foregoing.