ALLEN G. FISHER, APPELLEE, V. DELIA O'HANLON ET AL.; JAMES ROWAN, APPELLANT.

FILED APRIL 17, 1913.   No. 17,153.

1. Bills and Notes: NEGOTIABILITY: CONDITIONS IN MORTGAGE. Where a promissory note, negotiable in form, by which the maker promises to pay a certain sum in money, at a certain specified time, is made, and the note is secured by a mortgage, the reservation in the mortgage of an option on the part of the mortgagor to pay a part of the amount due at any time he may elect before maturity does not destroy the negotiability of the note secured by the mortgage.

2. ———: BONA FIDE HOLDER. A holder of a negotiable promissory note "in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face. (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Comp. St. 1911, ch. 41, sec. 52.

3. Attachment, Property Subject to: PROMISSORY NOTES. "The indebtedness of the maker upon a promissory note, before its maturity, is not the subject of attachment. His obligation is not

37

to the payee named in the note, but to the holder, whoever he may be." *Gregory v. Higgins*, 10 Cal. 339. See, also, *Clough v. Buck*, 6 Neb. 343.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Reversed with directions.*

*Albert W. Crites*, for appellant.

*Allen G. Fisher*, *Andrew M. Morrissey*, *William P. Rooney* and *William D. Elmer*, contra.

REESE, C. J.

On the 9th day of November, 1908, Henry Hern and Maria Hern executed their promissory note to Delia O'Hanlon for the sum of $500, due five years after date, with interest from date at the rate of 6 per cent. per annum. The note is negotiable in form, and, so far as the note itself upon its face is concerned, it is conceded to be negotiable. However, it was secured by a mortgage, which contains this stipulation: "The said Henry Hern and Maria Hern to have the privilege of paying the sum of $25 or $50 at any time during the five years on account of said principal sum." Otherwise the reference to the note is in the usual form. The note, as appears upon its face, matures November 9, 1913. Some time prior to the 12th day of November, 1908, plaintiff commenced suit against Mrs. Delia O'Hanlon in the county court of Dawes county. On the 7th day of December, 1908, the sheriff of the county made a return to the county court of summons and writ of attachment and garnishment, "from which the court finds that due and legal service of each of said writs has been made on November 23, 1908, by delivery to defendant in person in said county of true and certified copy of each writ, together with all indorsements thereon," and on said date Henry Hern and various banks "have each been attached as garnishee and their fees paid, and that thereby there was attached on said date a certain note and mortgage dated November 9, 1908, payable five

years after date, from Henry Hern to defendant," the
same being the note and mortgage above herein referred
to. The answer of the garnishee was taken, and, upon the
request of plaintiff, the cause was set down for trial upon
the calendar for December 12, 1908, at 9 o'clock A. M., to
which date the cause was continued. On that day the
cause was tried in the absence of an appearance by de-
fendant. The court found due and legal service of sum-
mons and writ of attachment had been made, and ren-
dered judgment against defendant in favor of plaintiff for
$750. Hern was ordered to pay the money due upon the
note into court as it matured. The defendant was ordered
to surrender the note and mortgage to the sheriff or the
court, with order of sale of the attached property. The
defendant was "forbidden to receive, receipt for, or col-
lect" any of the money due thereon, and the garnishee
"forbidden to pay any portion of the debt" to "any person
except into court or its officer." The above reference to
the proceedings is taken from a partial transcript of the
proceedings filed in the office of the county clerk of
Dawes county, which was offered in evidence on the trial
of this cause in the district court. No formal transcript
of the judgment was offered. The possession of neither
the note nor mortgage was ever obtained under the gar-
nishment proceedings, nor was either sold under any
order of sale. Plaintiff brought this suit in the district
court to foreclose the mortgage, alleging substantially the
foregoing facts, and making Henry Hern, Maria Hern,
Mrs. O'Hanlon, Mrs. Jackson, and James Rowan defend-
ants. Rowan filed his answer, with a cross-petition al-
leging his ownership of the note and mortgage, their trans-
fer to him in due course of trade before maturity, the
failure to pay interest due, and seeking a foreclosure
thereof. Mrs. O'Hanlon and Mrs. Jackson failed to an-
swer. A decree was entered, with findings in favor of
plaintiff, declaring the note due by reason of the failure
to pay interest, and ordering the foreclosure in favor of
plaintiff. Defendant Rowan appeals.

It appears that Mrs. O'Hanlon and Mrs. Jackson are sisters, both well along in years, and neither familiar with the customs of trade and commerce. Mrs. Jackson was possessed of some means. Mrs. O'Hanlon was practically destitute, with the exception of the 160 acres of land in Dawes county, which had come to her by inheritance. It had been necessary for her to make a number of trips from her home in Chicago, Illinois, to Chadron, and, in order to do so, she borrowed the necessary money to pay her expenses from Mrs. Jackson, until the indebtedness amounted to $525. Soon after receiving the note and mortgage from Hern, and on the 25th day of November, 1908, she executed an assignment of the note and mortgage to Mrs. Jackson, and caused them to be sent to her by mail to Beaver Dam, Wisconsin, where Mrs. Jackson resided. Soon thereafter they met, and Mrs. O'Hanlon paid Mrs. Jackson the $25 remaining due, thus satisfying her obligation to Mrs. Jackson. At a later date, alleged to be on or about the 22d day of October, 1909, Rowan purchased the note and mortgage from Mrs. Jackson, the evidence showing that he paid the sum of $500 in money therefor. The deposition of Mrs. O'Hanlon, Mrs. Jackson and Mr. Rowan were taken at Chicago. Mrs. O'Hanlon testified to the transfer of the note and mortgage to Mrs. Jackson, the time and consideration, the indebtedness to Mrs. Jackson, and the subsequent payment of the $25 remaining due. These facts were testified to by Mrs. Jackson, and that the note and mortgage were received by mail and accepted by her as payment on the $525 debt due from Mrs. O'Hanlon, and that at the time of the acceptance of the note and mortgage, and the final satisfaction of the balance due her and cancelation of the indebtedness, she had no knowledge or information that any effort had been made by plaintiff to reach the debt and the note and mortgage by attachment or other process. She also testified to their sale to Rowan, and the receipt of the sum of $500 in money therefor. Mr. Rowan testified to the payment of the money and the receipt of

the note and mortgage, indorsed by Mrs. O'Hanlon and Mrs. Jackson, without any knowledge or information of the attachment proceedings,

As the note is not yet due, according to its terms, there is no doubt that what was done in the way of its transfer was before maturity. But it is contended by plaintiff that the clause in the mortgage giving the makers of the note the option of paying sums of $25 and $50 on the debt, at any time they might desire to do so, destroyed the negotiability of the note and rendered it nonnegotiable under the rule that the note and mortgage considered together constituted the contract. If the provision in the mortgage rendered the note nonnegotiable, it may be conceded that, so long as it remained in the hands of the attachment defendant, the debt was liable to attachment process. If the note was negotiable and passed into the hands of innocent purchasers for value, before maturity, the purchaser would be protected. We are not aware that this identical question has been decided by this court. We are therefore required to consult the decisions of other courts of last resort, for we find nothing in the statute of this state settling the question.

In *Bowie v. Hume,* 13 App. D. C. 286, a negotiable promissory note was executed by the makers, and at the foot of the instrument, and below the signatures, were the words, "with privilege of paying all or any portion any time before maturity," signed by the makers. It was held that this did not affect the negotiability of the note. See, also, *Louisville Banking Co. v. Gray,* 123 Ala. 251, where the same rule, in principle, is applied, and *Louisville Banking Co. v. Howard & Kornegay,* 123 Ala. 380. In *Ackley School District v. Hall,* 113 U. S. 135, the school district had issued its negotiable bond under the provision of a statute which declared that the instrument should be "payable at the pleasure of the district at any time before due," and it was held that this did not destroy the negotiability of the bond; that it created only an option of the maker to pay before maturity, but that

the holder could not exact payment until the day of maturity had passed. In *Mattison v. Marks,* 31 Mich. 421, it was held that a promissory note, by which the maker agreed to pay a certain sum "on or before" a day named, was a negotiable instrument; that the words "on or before" only gave the maker the option before the date of maturity, but conferred upon the holder no right to enforce payment before that time. See, also, section 4, ch. 41, Comp. St. 1911. In *Cunningham v. McDonald,* 98 Tex. 316, it was held that "a promissory note is not rendered nonnegotiable by the fact that the maker, promising to pay by a day certain, reserves to himself by its terms the right to pay sooner." In *Leader v. Plante,* 95 Me. 339, a promissory note was made payable "within one year after date," and it was held to be negotiable; that the option to pay did not destroy its negotiability.

The authorities are not entirely harmonious upon the question of what recitals in a note render it nonnegotiable. But we have found no case where it is directly held that the reservation of a mere option on the part of the maker of an otherwise negotiable note or bond to pay a part of the debt before maturity, the exact time for maturity being fixed, destroys the negotiability of the note. In so far as the time when the payee may demand and enforce payment, this note, even with the stipulation of the mortgage included as a part of it, complies strictly with the requirements of section 1, ch. 41, Comp. St. 1911, known as the "Negotiable Instruments Law."

The case of *Campbell v. Nesbitt,* 7 Neb. 300, is relied upon by plaintiff as sustaining his view of the right to attach the debt in question, but it gives us no real light upon the question, as the note in that case became due on the 10th day of March, 1872, and was attached in 1874, long after its maturity, and while yet in the hands of the payee, who did not transfer it until in November, 1874, and after judgment had been rendered against the garnishee. The note was clearly dishonored and had lost its negotiable quality at the time of its transfer to plain-

tiff Campbell.   Without pursuing this subject further, we hold that the reservation of the option in the mortgage did not destroy the negotiability of the note.

As to the defendant Rowan being a *bona fide* holder for value before maturity, the evidence is all one way. Whether true or false, he testified that he made the purchase without any knowledge of the attachment proceedings, in good faith, and paid the sum of $500, the face of the note, in money.   He is supported in this by Mrs. Jackson, who testified that he paid her the money, and that she indorsed and delivered the note to him.   It is provided by section 52, ch. 41, Comp. St. 1911, that a holder in due course is one who has taken the instrument under the conditions that it is complete and regular upon its face; that he became the holder before it was overdue, and without notice of any previous dishonor, if such was the fact; that he took it in good faith and for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it.   So far as is shown by the evidence, he appears to have come within the provisions of this section.   It is true that he had never seen the land and knew little or nothing about its quality or the condition of the title, except what information he had obtained from the indorsers, with whom he had been acquainted for many years, and it would be quite natural for one of his want of experience in commercial affairs to rely upon their fairness and to presume that 160 acres of Nebraska land would be sufficient security for $500.

The note being negotiable, and its possession and custody not having been obtained under the attachment and garnishment proceedings, the question arises as to what rights, if any, plaintiff acquired by his action.   In *Gregory v. Higgins*, 10 Cal. 339, in an opinion by Judge Field, it is said: "The indebtedness of the garnishee was upon a promissory note, which did not mature for several months thereafter.   From the very nature of a promissory note, it is evident that, before its maturity, the indebtedness of the maker thereon cannot be the subject of

attachment. His obligation is not to the payee named in the note, but to the holder, whoever he may be. From its negotiability, it may often pass into the possession of parties entire strangers to the maker, and, even if held by the defendant at the time of garnishment, it does not follow that it would be in his hands at its maturity, and, if transferred before maturity to a *bona fide* holder, it could be enforced, even if paid upon the attachment. *McMillan v. Richards,* 9 Cal. 365, 418; *Sheets & Grover v. Culver,* 14 La. 449. It follows that the notice served upon Marshall, previous to the maturity of his note, did not operate as a garnishment of the amount in his hands. Nor would the notice, served subsequent to the maturity, have any greater effect, unless the note was, at the time, in the possession of the defendant, from whom its delivery could be enforced on its payment upon the attachment." In *Clough v. Buck,* 6 Neb. 343, Judge GANTT, in writing the opinion of the court, said: "It seems to be a general rule that a negotiable note or bill is not, before maturity, subject to attachment. The reason of the rule is well stated in *Gregory v. Higgins,* 10 Cal. 339"—and quite a lengthy excerpt is copied from the opinion with approval. In 2 Wade, Attachment, sec. 458, it is said: "Whatever be the form of commercial paper that evidences the original liability of the party summoned, as a general rule, he cannot be charged as the debtor of the payee, if the paper was negotiable when issued, and still retains its negotiability" —citing a number of cases, and stating the reasons for the rule in the text with considerable elaboration. In 1 Daniel, Negotiable Instruments (5th ed.) sec. 800a, it is said: "The purchaser of a bill, note, or other negotiable instrument for value and before maturity, is not, as a general rule, affected by any litigation to which he is not a party, which may then be pending, and in which the instrument is involved, nor will a decree or judgment, when rendered in such litigation, affect him, the doctrine of *lis pendens* having no application to negotiable instruments." See, also, Drake, Attachment (7th ed.) sec. 582 *et seq.*

Some questions involving the procedure are presented, but they need not be noticed. After a patient and careful investigation of the subject, we are led to the conclusion that plaintiff acquired no rights by his garnishee process, and that the decree of the district court foreclosing the mortgage in his favor cannot be sustained; that, as Rowan was made a defendant and presented his mortgage asking a foreclosure thereof, the court should retain the case and make a final disposition of it. Henry Hern, the maker of the note, sold the mortgaged premises to William Hern, who assumed the payment of the mortgage debt, and who is made a party defendant herein, and subsequent to such sale, and during the pendency of this suit, the said Henry Hern died, but no serious question arises from these facts, the said William Hern being a party defendant.

The decree of the district court foreclosing the mortgage in favor of plaintiff and dismissing Rowan's cross-petition as a first lien is reversed, and the cause is remanded to the district court, with directions to dismiss plaintiff's suit, and to enter a decree in favor of Rowan foreclosing the mortgage.

REVERSED.

BARNES, LETTON and SEDGWICK, JJ., concur.

ROSE, FAWCETT and HAMER, JJ., not sitting.