The conviction and sentence appealed from are therefore

Affirmed.

O'NIELL and LECHE, JJ., take no part.

---

(76 South. 612)

No. 22138.

CONTINENTAL BANK & TRUST CO. v. TIMES PUB. CO. et al.

In re TIMES PUB. CO.

(April 16, 1917. On Rehearing, Oct. 29, 1917.)

*(Syllabus by the Court.)*

1. BILLS AND NOTES ☞163, 165, 315—NEGOTIABILITY—DEFENSES.

Where, after an unconditional promise to pay, contained in an instrument, dated March 24, 1913, and possessing all the other requisites of a negotiable promissory note, there are added, as an integral part of the contract, a statement and a stipulation in the following language, to wit: "Rent for month of August, 1915, for part of brick building on corner of Marshall street and alley, in Shreveport, as per contract dated March 24, 1913," though the statement (that the consideration of the note is an installment of rent to become due in the future) may be regarded as a mere identification of the note with the transaction out of which it arose, and recital of the consideration, which do not impair its negotiability, the stipulation, "as per contract dated March 24, 1913," operates to qualify the unconditional promise to pay previously expressed, and subjects it to the conditions imposed by the terms of the contract thus referred to, and (it being a contract of lease for ten years) to the law, which relieves the lessee of the obligation to pay in the event of the destruction of the leased property and entitles him to make repairs in a certain contingency, and deduct the costs from the rental otherwise due by him, and, the note being thus deprived of its quality of negotiability, is open to such defenses, in the hands of a purchaser for value, before maturity as might have been set up against the party to whom it was issued.

Provosty, J., dissenting.

*(Additional Syllabus by Editorial Staff.)*

2. WORDS AND PHRASES—"AS PER."

"As per" is a sort of law and business term which is hardly susceptible of literal translation, but which is commonly understood to mean, in accordance with, or, in accordance with the terms of, or, as by the contract authorized.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, As Per.]

Suit by the Continental Bank & Trust Company against the Times Publishing Company and others. From a judgment of the Court of Appeal in favor of the plaintiff, defendant Times Publishing Company applies for certiorari or writ of review. Decree formerly entered in case set aside, and judgment of Court of Appeal amended by reducing amount awarded to plaintiff.

Blanchard & Smith, of Shreveport, for applicant. James E. Smitherman, of Shreveport, for respondent.

PROVOSTY, J. The defendant entered into a ten-year lease of a building, and executed for the 120 monthly installments of the rent as many notes, to its own order and by itself indorsed in blank, reading as follows, with change only of date when payable and of month for which given:

"$150.      Shreveport, La., March 24, 1913.

"September 1st, 1915, after date I promise to pay to the order of myself one hundred and fifty dollars with 7 per cent. per annum interest from maturity until paid at Commercial National Bank of Shreveport, La., rent for month of August, 1915, for part of brick building located on

corner of Marshall street and alley in Shreveport, La., as per contract dated March 24, 1913. "Value received.

"The Times Publishing Co., Ltd."

The present suit is upon two of these notes. The defense is that their consideration has failed, as the result of the leased building having been destroyed by fire before the rent for which they were given could accrue. The question is whether this defense is available against plaintiff, in view of the fact that plaintiff acquired the notes in good faith, before maturity, for value. That question depends upon whether the notes were negotiable in the technical sense of that term; that is to say, in the sense that they passed to plaintiff free of all defenses that might have been urged against the original holder, the lessor. Defendant's reason for contending that they were not thus negotiable is that the recital on their face of their having been given for rent "as per contract" had the effect of reading the contract of lease into them, and thereby conveying full notice that their consideration might fail, as it was an executory contract which might fail of performance.

The notes are to the order of the maker and by him indorsed in blank; that is to say, in form for passing by mere delivery, without further indorsement, like bank notes. The recital in question is nothing more than a statement of the transaction which gave rise to them, and "a statement of the transaction which gives rise to the instrument" does not destroy its negotiability. See Negotiable Instruments Law. (Act 64, p. 147, of 1904) § 3.

Very true by said recital knowledge was conveyed to all takers that the consideration of the notes was an executory contract that might fail of performance; but the fact that the consideration of a note is known to be an executory contract that may fail of performance does not destroy the negotiability of the note. Edwards on Bills and Notes,

par. 519; Daniel, on Neg. Ins. 740–748; 2 Randolph, Com. Paper, 1018, 1019; 4 A. & E. E. of L. 90; 8 Corpus Juris, 121; 1 Parsons, Bills & Notes, 261.

Whether the case might not be different if the contract thus read into the note contained an express condition that the note should be payable only in the event the contract was performed is a question not up for consideration in this case, since no such express condition is contained in the lease in this case, but only the implied condition, equally existing in all cases where the recited consideration of the note is an executory contract.

The two lower courts decided the case in favor of the plaintiff, on the authority of Sadler v. White, 14 La. Ann. 177, where this court allowed the transferee of a rent note to recover, although he knew at the time of the transfer that the note had been given for rent, and although, subsequently to the transfer, the consideration of the note had failed, as the result of the lessee having been ousted by the foreclosure of a mortgage superior in rank to the lease, and also on the authority of State National Bank v. Cason, 39 La. Ann. 867, 2 South. 881, where the transferee of a note given by a planter to a commission merchant for advances to be made was allowed to recover, although he knew the origin of the note at the time of the transfer, and although the consideration of the note thereafter had failed by reason of the advances not having been made.

The learned counsel for defendant would distinguish the first of these cases on the ground that the note there involved did not contain on its face the recital of its having been given for rent; and they contend that the point really involved in that case was as to whether parol evidence could be received to vary or contradict the note, and that what else the court may have there said was mere obiter.

The defense in that case was that the note had not passed to the plaintiff free of the

equity in question, because he had acquired it with full knowledge of this equity; the defense in the instant case is that the notes did not pass to plaintiff free of the equity in question because plaintiff acquired them with full knowledge of this equity. The equity in question in the one case is precisely the same as in the other, namely, that the consideration of the note was a lease contract which has failed. The question in the one case is precisely the same as in the other, namely, whether this equity is one which can be invoked against the transferee of a note payable to order. And the negative of that question is what the court decided in that case, and what it decides in this. The only difference between the two cases is that the fact of the transferee's having had knowledge of this equity at the time he acquired the note had to be proved in that case dehors the note, whereas it is proved in this case by the recital on the face of the note.

The case could be differentiated only if the recital in a note of the origin of the note, or, in the language of the Negotiable Instruments Law, "a statement of the transaction which gives rise to the instrument" could take the note out of the category of commercial paper; but this statute, which is but an epitome of the general commercial law, declares that it does not.

The second of the above-named cases might have been decided on the ground that the note there involved was made for the purpose of being negotiated; that the understanding at its making had been that it should be negotiated; but while that fact is referred to by the court, it was not made the basis of the decision; the decision is based squarely on the familiar principle of commercial law that a negotiable instrument, when transferred "in due course," passes free of equities.

Analogous with said two cases are those where the transferees of notes given for the purchase price of property have been allowed to recover, although the consideration of the notes had failed subsequently to the transfers, as the result of the eviction of the makers, and although the transferees had had, at the time of the transfers, full knowledge of the possibility of this eviction and consequent failure of consideration. Maurin v. Chambers & Williams, 16 La. 207; Id., 6 Rob. 62; Davie v. Stevens, 10 La. Ann. 496; Fusilier v. Bonin, 12 Mart. (O. S.) 235; Canal Bank v. Holland, 5 La. Ann. 363.

Judgment affirmed.

MONROE, C. J., and O'NIELL, J., dissent.

### On Rehearing.

MONROE, C. J. We have reconsidered the questions involved in this case and a majority of the court, as now constituted, having reached conclusions differing from those heretofore expressed by a majority, the following reasons are assigned therefor, to wit:

The case was tried in the district court in part upon an "agreed statement of facts," the original of which has been sent up with the record, and of which we make the following summary:

The Times Publishing Company, by written contract of date March 24, 1913, leased from the Oliff Brick Company, for a term of ten years, part of a building in Shreveport, and, in recognition of its obligation in the premises, issued 120 notes, each for $150, made payable upon the first of each month of the term (beginning with October 1, 1913), to the order of the maker and by it indorsed in blank, and each representing the rent for the preceding month. Some of the notes, including the two herein sued on, were indorsed by the brick company and "sold and transferred" by it to the plaintiff bank "in payment of certain indebtedness due to the bank," and the two show, upon their faces, that they represent obligations for the rent

of August and September, 1915. The publishing company publishes the Shreveport Times, and, when it went into the leased premises, it was compelled to do certain electric wiring in order to operate its plant. A fire occurred, on March 27, 1915, which did considerable damage to the building and destroyed the wiring, but the loss was covered by policies of insurance which had been issued to the brick company and had been turned over by that company, with the rent notes, to the bank; but the bank, thereafter surrendered the policies to the brick company, which collected $181.86 on that account. The wiring had to be replaced in order that the publishing company might operate its plant, and it made repeated demands upon the brick company to replace it, but without avail; and it notified the brick company that it would have the work done and deduct the cost from the rent, and took similar action in regard to the repairing of a leak in the roof, at a cost of $12; after which, it deducted the expense so incurred from the rent for the months of August and September, represented by the notes sued on, and, when the bank brought suit upon the notes, it tendered the difference between the amount claimed by it and the amount claimed by the bank, which tender was refused.

The bank then sued on the two notes mentioned, which have been sent up with the record. They are prepared upon stationers' forms and have printed on them (in script type) certain words, with spaces, to be filled in. The filling in is typewritten, and, as filled in, the notes read, save for the names of the months and their maturities, as follows (the matter originally appearing on the forms being italicized), to wit:

$150.00. Shreveport, La., March 24, 1913 *191*

September 1, 1915, *after date*, I *promise to pay to the order of* myself one hundred and fifty dollars with 7 per cent per annum interest from maturity until paid.
*At* Commercial National Bank of Shreveport, La.

*Value received* rent for month of August, 1915, for part of a brick building located on corner of Marshall St. and alley, Shreveport, La., as per contract dated March 24, 1913.
The Times Publishing Co., Ltd.,
[Signed] Robert Ewing, Pres't.

The instruments, as we have stated, are indorsed, in blank, by the maker and by the Oliff Brick Company.

We quote the following provisions of the Civil Code, which seem pertinent to the present inquiry:

"Art. 2693. * * * The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make as hereafter directed.
"Art. 2694. * * * If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may, himself, cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable. * * *
"Art. 2697. * * * If, during the lease, the thing be * * * destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. * * *"

It is apparent that the law thus quoted is read into, and forms part of, every contract of lease entered into in this state, unless the parties expressly stipulate to the contrary, and, as it is not suggested that the lease here in question contains any such stipulation, it follows that, for the purposes of this case, it is to be considered as written therein that the lessee should have the right to deduct from the rent, otherwise falling due, the cost of repairs made by it under the circumstances stated in articles 2693 and 2694, and that it should no longer be liable for rent in the event of the destruction of the property as stated in article 2697.

The district court and Court of Appeal found that the cost of the repairs, for which the defendant paid, amounted to the sum claimed by way of deduction, and it was

conceded in those courts, and is not disputed here—

"that the repairs for which defendant paid were such as the law obliges the landlord to make, and that defendant would have the right to deduct the amount from the notes if they were in the hands of the lessor.

"The contention of the defendant [says the Court of Appeals] is, that the notes show, upon their faces that their consideration was a lease contract [and] any holder of them is charged with equities which may spring into existence between the lessee and the lessor. This contention, expressed in another form, is that the reference to the contract in these notes takes them out of the category of unconditional obligations to pay a certain sum of money and writes into the contract by which they are transferred all of the conditions of the lease contract and of the law governing the same. This contention presents the sole issue in the case. It was decided against the defendant in the lower court, and it has appealed."

Our learned Brethren then proceed, with reasoning and citation of adjudged cases, to the conclusion that the language in which the lease here in question is referred to, in the notes, was intended to have, and should be given, no other effect than to identify the notes with, and show that their consideration arose from, that contract, just as the paraph, ne varietur, identifies a note with the act of mortgage whereby it is secured, but that it did not affect their negotiability that, by reason of some contingency that might arise in the future, the use of the premises, during the period for which they were given in payment of the rent, might not be enjoyed. Still following the reasoning and quoting the language of this court in the case of Sadler v. White, 14 La. Ann. 177, they say:

"Any one having sufficient confidence in another to give his written obligation for something to be given or enjoyed hereafter is at liberty to do so, and the maker cannot censure any future holder of the note for having purchased it, and for seeking to hold him liable, for it was the faith of the maker [should be payee] in the payee [should be maker] that he would execute his promise and allow no obstacles to defeat it that created the note and gave currency to it."

[1] The view thus expressed was also applied by this court in the original opinion herein handed down, and we think that view sound, when properly applied, but do not, after further consideration, find it applicable to this case. The note sued on, in Sadler v. White, reads:

"On the first of January 1857, we, or either of us, promise to pay T. L. Warsham, or bearer, three hundred and fifty dollars, for value received, with eight per cent. interest from maturity until paid."

The date of the instrument does not appear, but we infer that it was executed prior to, or in the beginning of, the year 1856, and it was set up as a defense that it was given wholly or in part, for rent to become due in that year, and that, on May 3d the leased premises were sold to satisfy a pre-existing mortgage and vendor's privilege, by reason whereof the lessee had been compelled to pay the rent to the purchaser; the note having, in the meanwhile, before maturity and before the failure of consideration, passed into the hands of a third holder, who acquired it in good faith and for value, though with knowledge of the consideration for which it was given. It will be observed that the note in question was a strictly negotiable instrument, being an unconditional promise to pay, to a named person, or bearer, a certain sum of money at a certain time, so that, in condemning the maker to pay to a third person, who had become the "bearer," the court merely condemned him in accordance with the terms of, or "as per," his contract, which contract was wholly expressed on the face of the note. But let us suppose that, after "value received," or, after "until paid," as those words appear upon the note, the maker had added, "as per contract of even date herewith," and, as was the case, that the contract so mentioned, being a contract of lease, governed by our law, contained (whether expressed in terms or by implication of law) a stipulation to the effect that the obligation,

represented by the note, to pay the rent of the leased premises, should be void in the event of the eviction of the maker, and lessee, during the term of the lease, would not such a stipulation, being a most important part of the contract, in accordance with which, by its express terms, the obligation to pay was to be discharged, have operated to qualify that obligation and subject its discharge to the condition that the maker of the note, and lessee, be permitted to receive and enjoy the consideration for which it was issued, i. e., the use of the premises for the rent of which the note was given in payment?

In the notes here sued on, the promise to pay and that which follows, omitting certain matter that is irrelevant to the present issue, are thus expressed:

"Shreveport, La., March 24, 1913.

"September 1, 1915, * * * I promise to pay to the order of myself one hundred and fifty dollars, * * * value received, rent for month of August 1915 [or other month in the future] for part of brick building * * * in Shreveport, as per contract dated March 24, 1915."

(And the instrument was indorsed by the maker, in blank.)

In other words, reading down to and including the words "value received," the maker had executed negotiable notes which would have been incontestable in the hands of a "holder in due course," and, as he could not have added anything to their negotiability, it must be presumed that, in adding what he did to the language used, he had some other purpose in view. The addition, following the words, "value received," and embraced in the same sentence as, and constituting an integral part of, the contracts expressed in the notes, which up to that point imported unconditional obligations to pay the notes, in full, at maturity, consists: First, of the statement that the promised payments were for the rent of certain premises, for certain months which were then in the womb of the future; and, second, of the stipulation referring to the "contract of March 24, 1913."

Conceding that the mere statement, upon the faces of the notes, that they were given in payment of future rent (notwithstanding the possibility that the leased premises might be destroyed before the maker, as lessee, could be put in possession) amounted to nothing more than a recital of the consideration and identification of the notes, and that the right which the maker acquired, or may be presumed to have acquired, to occupy the premises, was a valuable consideration, and hence the statement in no wise impaired the negotiability of the notes, the question next to be considered is suggested by the stipulation, whereby the contemporaneous "contract of March 24, 1913," was *brought into, and made part of, the contracts expressed in the notes.* It may very well be that a statement on the face of a note, merely identifying it as having been given on a particular occasion, or in connection with a particular transaction, will not effect its negotiability; but where, to the unconditional promise to pay, which is the sole obligation of the contract expressed in a negotiable note, there is added a declaration, or stipulation, to the effect that such obligation is assumed, or is to be discharged, subject to, in accordance with, or "as per" the terms of a collateral and contemporaneous contract, a very different question is presented. A contract to make a payment, or to do something, "as per" another, prior, contemporaneous, or subsequent contract, means that the one contract is to be executed in accordance with the terms and conditions of the other, upon which the parties have agreed, or are to agree, and such an agreement can have no place in a negotiable instrument, concerning which, it has been well said:

"A negotiable bill or note is a courier without luggage. It is requisite that it be framed in the fewest possible words, and those importing the most certain and precise contract; and, though this requisite be a minor one, it is entitled to weight in determining a question of intention." Overton v. Tyler, 3 Pa. (Barr) 346,

45 Am. Dec. 645, cited in Dan. on Neg. Inst. (5th Ed.) p. 53, note.

The whole contract must be expressed upon the face of the instrument, and, among other things, the promise to pay must be unconditional. But a promise is not unconditional which is followed, in the same sentence, with a stipulation to the effect that it will be fulfilled, as per another contract, whereby the payment is made contingent upon the non-happening of fortuitous events.

It may be asked, What did the maker of the notes mean by coupling its unconditional promise with the stipulation that we have been considering? Plaintiff's learned counsel and our learned Brethren have thought that it meant nothing more than to identify the notes with the transaction which created the occasion for them, and uselessly recite their consideration, but they have hardly, as we think, taken the stipulation, as we have called it, sufficiently into account, and we are unable to concur in that conclusion. Notes were, no doubt, demanded by the lease, and, as there were 120 to be issued, the lessor or notary probably furnished the forms upon which they were to be prepared, and which, as we have shown, contained certain words already printed on them. It was not unnatural that the maker, or whoever may have prepared them, should have filled the spaces in the forms, and then added thereto what, as we conceive, was considered a sufficient qualification of the resulting obligations to protect the maker from the issuance of notes for which it might receive no consideration and which would impose upon it obligations not contemplated by the main contract into which it was entering, and the qualification follows the promise to pay as closely as the paper and matter already printed on it would reasonably permit. It is clear that, if there had been no such qualification of the unconditional promise, as written, and the leased premises had been destroyed, upon October 2, 1913, defendant would have been liable on the notes, in the hands of a holder in due course, to the amount of $18,000, for which it could have obtained no consideration whatever; and that, even if the premises had not been destroyed, and the notes had been so held, it would have been denied the right which the law gives to the lessee, and which the lessee in this case is here asserting. It had therefore a sufficient reason for being unwilling to make its notes negotiable; in fact, it seems hardly possible that an ordinarily sane person thus situated would have thought, for a moment, of so doing. That the qualification was sufficient to destroy the negotiability of the notes and was so intended, we think is beyond question, and we have found no authority to the contrary which appears to us applicable to the facts here presented. The Negotiable Instruments Act (Act 64 of 1904) defines the "holder in due course" as follows:

"Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We are of opinion that the notes here in question are not regular upon their faces because of the infirmity which we have here considered and which deprives them of the attribute of negotiability, and are further of opinion that as that infirmity was stamped upon their faces when they were made, and was there when they were negotiated, plaintiff acquired them with notice thereof and holds them subject to such defenses as might have been set up against the party to whom they were issued. That there is nothing novel in the view thus expressed appears from

the fact that it has been expressed by other courts.

In Daniel on Negotiable Instruments (5th Ed.) vol. 1, p. 49, the author cites several cases in which notes were held to be non-negotiable by reason of their containing such expressions as "payable subject to the policy [of insurance]"; "subject to a certain contract"; "as per agreement." At page 58, same volume, he·cites the case of Ehrichs v. De Mill, 75 N. Y. 370, where payment was ordered to be made "on account of work done as per contract," and in which it was said by the court:

"It would seem clear that an order for payment, 'as per contract,' confined the direction for payment to the fund becoming due by the contract."

In the annotation to the case of Klots Throwing Co. v. Manufacturers' Commercial Co., 30 L. R. A. (N. S.) pp. 42, 43, we find the following:

"In First Nat. Bk. v. Badham, 86 S. C. 170, 68 S. E. 536 [138 Am. St. Rep. 1043], certain notes were held nonnegotiable on account of the following reference contained therein: 'For value received in one machinery, as per contract November 23, 1899.' The court said: 'This provision is notice to the commercial world of a contract made November 23, 1899, in connection with the purchase of the machinery for which these notes were given; the terms of the contract do not appear on the face of the notes, but it is sufficiently referred to and stated to inform those who deal with these notes that they must take the contract into consideration in so doing.' * * *
"In Oatman v. Taylor, 29 N. Y. 649, wherein several notes were given 'for interest on a loan * * * according to the conditions of a certain agreement in writing,' * * * the effect of the stipulations upon the negotiability of the paper was not decided, Johnson, J., merely saying: 'If it were necessary to determine the question whether these several instruments, with the exception of the first [which contained no qualifying words], were negotiable, so as to protect the holder taking them, before maturity, from the provisions of the contract, without any other notice than what appears upon their face, I should incline most decidedly to the opinion that they were not, but would be affected and controlled by the contract in the hands of any holder. * * * I have not thought it necessary, however, that this question should be passed on here.'"

[2] "As per" is a sort of law and business term which is hardly susceptible of literal translation, but which we think, when used as in this instance, is commonly understood to mean, in accordance with, or in accordance with the terms of, or, as by the contract authorized. Thus a merchant shipping goods in compliance with a letter of instructions to that effect, may write, "I have this day shipped goods as per instructions contained in your letter," meaning, in accordance with the instructions, etc.; and one who draws bills upon another by agreement may write, "As per agreement, I have drawn," etc., meaning, in accordance with agreement, or subject to our agreement, or as by agreement authorized, I have drawn, etc.

For the reasons thus assigned, it is ordered and adjudged that the decree heretofore entered in this case be set aside, and that the judgment of the Court of Appeal, here made the subject of review, be amended by reducing the principal amount thereby awarded to the plaintiff to $106.14, thus allowing defendant $193.86, in reduction of the amount claimed by plaintiff. It is further decreed that plaintiff pay all costs incurred in this litigation subsequently to the tender made by defendant in the district court.

See dissenting opinion of PROVOSTY, J., 76 South. 618.