(87 South. 332)
## STRAND AMUSEMENT CO. v. FOX.
### (3 Div. 469.)

(Supreme Court of Alabama. Jan. 13, 1921.)

Bills and notes ⬤⚏165—Promissory note held not made nonnegotiable by words "as per contract."

Under Negotiable Instruments Law (Code 1907, § 4960), providing that an unqualified order or promise to pay is unconditional, though coupled with a statement of the transaction which gives rise to the instrument, a promissory note, being in the usual form, containing the usual phrase "value received, with interest," and usual clause waiving exemption, etc., is not rendered nonnegotiable by the insertion, in the blank space opposite the word "No." in lower left-hand corner of note, of the words "as per contract," since to destroy negotiability the reference to a collateral contract must show that the obligation to pay is burdened with conditions of the contract, and statutory provision is merely declaratory of common law.

McClellan, J., and Anderson, C. J., and Thomas, J., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Assumpsit by George W. Fox against the Strand Amusement Company. Judgment for the plaintiff, and defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

The action is on two promissory notes executed by the defendant company and made payable to the order of Orchestra, Sales & Supply Company, and indorsed by the payee to the plaintiff. Just under the sum specified is the usual phrase "value received, with interest," etc., and then follows the usual clause "waiving exemptions, agreeing to pay cost of collection, and waiving notice and protest on nonpayment." In the lower left-hand corner there is written in the blank space to the right of the word "No." the words "as per contract." The only issue presented in the case by the pleadings and under the written agreement of the parties was whether or not the words "as per contract" destroyed the negotiability of the notes as a matter of law; it being agreed that plaintiff is a bona fide holder in due course, except as the quoted words may impart notice to him of conditions which would defeat any right of recovery by the original payee. The trial court held the notes to be negotiable.

Weil, Stakely & Vardaman, and Walton H. Hill, all of Montgomery, for appellant.

The courts have decided the questions presented in two ways, and a great many of the cases are collected in 179 Fed. 813, 103 C. C. A. 305, 30 L. R. A. (N. S.) 40, and note. The case reported in 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663, relied on by appellee,

as well as that in 208 Mass. 7, 94 N. E. 302, supports the contention of appellant that the notes were nonnegotiable. See, also, 86 N. C. 170; 142 La. 209, 76 South. 612, L. R. A. 1918B, 632; 203 Ala. 256, 82 South. 498.

Arrington & Arrington, of Montgomery, for appellee.

The notes were negotiable. Section 4960. Code 1907; 6 Ala. 373; 203 Ala. 256, 82 South. 498; 8 C. J. 119, etc., 3 R. C. L. § 112; 78 Or. 641, 154 Pac. 104; 1 M. & W. 232; 108 Mich. 184, 66 N. W. 493, 36 L. R. A. 117, 62 Am. St. Rep. 698; 195 Ill. App. 311; (C. C.) 4 Fed. 25; 192 S. W. 89; 164 N. W. 67; 164 Ill. 197, 45 N. E. 512.

SOMERVILLE, J. The single question presented by the record is whether or not the negotiable character of the notes sued on is destroyed by the words "as per contract," which are written on the face of the notes.

The Negotiable Instruments Law (Code, § 4960) provides that—

"An unqualified order or promise to pay is unconditional, * * * though coupled with: * * * (2) A statement of the transaction which gives rise to the instrument."

This is merely declaratory of the old law merchant (8 Corp. Jur. 120, § 213; People's Bank v. Moore, 201 Ala. 411, 78 South. 789), and—

"It may be stated as the general rule that wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make it subject to the terms of that contract, as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction, or constitutes the consideration of the bill or note, the negotiability of the paper is destroyed." 3 R. C. L. 883, § 69.

But "the negotiability of a note is not affected by a reference which is simply a recital of the consideration for which the paper was given, or a statement of the origin of the transaction, or by a statement that it is given in accordance with the terms of a contract of even date between the same parties." 3 R. C. L. 918, § 112.

In short, to destroy negotiability, the reference to a collateral contract must show that the obligation to pay is burdened with the conditions of that contract.

In the application of this general principle to particular cases, the decisions, as might be expected from the nature of the subject, are by no means harmonious. In this state, so far as we are advised, there is no precedent sufficiently in point to be of assistance in the solution of the instant case.

Where the promise to pay is made "subject to" some other contract referred to, the authorities seem to be agreed that the obligation is conditional, and negotiability is destroyed. Klots, etc., Co. v. Manufacturers', etc., Co., 179 Fed. 813, 103 C. C. A. 305, 30 L. R. A. (N. S.) 40, and note, citing numerous cases; L. R. A. 1918B, 639; 8 Corp. Jur. 124, § 216. So, where the payment was to be made "according to the requirements of a certain agreement of even date herewith," the note was held nonnegotiable. Chicago, etc., Bank v. Chicago T. & T. Co., 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rep. 138.

Where the words "as per terms of contract" were written after the words "value received," it was held that negotiability was not affected by the reference. Nat. Bk. of Newbury v. Wentworth, 218 Mass. 30, 105 N. E. 626.

In Slaughter v. Bank of Bisbee, 17 Ariz. 484, 154 Pac. 1040, it was held that a memorandum under the signature of the maker, "for payment under contract of even date," did not affect negotiability, and the court, per Ross, C. J., said:

"The usual way to condition or to make contingent a promise to pay is to use language clearly carrying that intention and purpose either by direct expression or by reference to some extrinsic contract in such manner as to make the payment of the note subject to the terms and conditions of the contract. * * *. If it can be said that the expression (quoting it) fairly or reasonably means that the note was given and its payment was to be made 'subject to the terms of the contract,' therein referred to, it would follow that, if the contract was executory, the payment of the note was subject to its conditions. There is nothing in the language to indicate that the contract referred to was an unexecuted contract. From what appears in the expression the contract may have been fully performed and executed. It has neither subject nor predicate; it does not assert or affirm anything—it is a mere combination of words from which it may be inferred that a contract had been entered into between somebody on its date. We cannot enter into the speculation of inserting or supplying omitted words, as appellant would have us do, in order to give it the force and effect of limiting and qualifying the unconditional promise of the makers as contained in the body of the note—we must accept the words actually used, which do not declare anything, or assert anything, or affirm anything, but are a mere allusion to or signpost of the transaction out of which the note originated. It does not mean the same, as suggested by appellant, as the expression, 'this note is made subject to contract of even date,' for in the latter expression there is carried the idea of a subsisting and unfulfilled contract, an executory contract. * * * In the case at bar there is an absence of language to indicate that this note was to be burdened with the conditions of any agreement. At most it is a mere reference to the origin of the transaction and 'constitutes notice of the existence of the contract,' but 'not of the breach thereof.'"

The court alluded to the case of Klots, etc., v. Mfrs., etc., Co., supra, and quoted with approval its statement that if the memorandum

"merely constitutes notice of the existence of the contract, and not of the breach thereof, it would not affect negotiability."

In Doyle v. Considine, 195 Ill. App. 311, it was held that negotiability was not affected by a memorandum that "this note *is given* in accordance with a land contract of even date" (italics supplied). The memorandum in that case is materially different from the one which led to a different conclusion in 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rep. 138, cited supra.

In Waterbury-Wallace Co. v. Ivey, 99 Misc. Rep. 260, 163 N. Y. Supp. 719, the words "as per contract of Nov. 12, 1915," followed the phrase "value received," and it was held that negotiability was not affected. In that case it was observed that—

"The tendency of the courts is to construe commercial instruments having on them a memorandum or reference to dealings between the parties as negotiable, if they in other respects have all the characteristics of negotiability"

—a principle of construction which is affirmed in the text of 8 Corp. Jur. 119, § 212.

In First Nat. Bk. v. Badham, 86 S. C. 170, 68 S. E. 536, 138 Am. St. Rep. 1043, a majority of the court held that the words "as per contract of November 23, 1899," following the phrase "for value received," did not render the note nonnegotiable. The headnote of the reporter in this case is erroneous, as an examination of the individual opinions of the justices will clearly show. This error has led to its erroneous citation in several instances by judges and annotators.

In Coleman v. Valentin, 39 S. D. 323, 164 N. W. 67, it was held that the memorandum, "This note is one of a series given in payment of land under the contract this day executed," did not affect negotiability.

On the other hand, the case of Continental B. & T. Co. v. Times Pub. Co., 142 La. 209, 76 South. 612, L. R. A. 1918B, 632, is strongly relied upon by counsel for appellant as supporting their contention in the instant case. There the notes in question were made payable to the order of the maker, and by him indorsed in blank. They contained the following: "Value received rent for month of [specifying] for part of a brick building [describing], as per contract dated March 24, 1913." On the original hearing it was held, two justices dissenting, that this reference to another contract did not subject the note thereto, and hence did not affect its negotiability. But on rehearing, the personnel of the court having in the meantime changed, that decision was set aside, and the holding then was that negotiability was destroyed. Provosty, J., adhering to his original views, filed a dissenting opinion.

The point of view of the majority is thus stated by Monroe, C. J.:

"It may very well be that a statement on the face of a note, merely identifying it as having been given on a particular occasion, or *in connection with a particular transaction*, will not affect its negotiability; but where, to the unconditional *promise to pay*, which is the sole obligation of the contract expressed in a negotiable note, *there is added* a declaration, or stipulation, to the effect that such obligation is assumed, or is to be discharged, subject to, in accordance with, or 'as per' the terms of a collateral and contemporaneous contract, a very different question is presented. A contract to make a payment, or to do something, 'as per' another, prior, contemporaneous, or subsequent contract, means that the one contract is to be executed in accordance with the terms and conditions of the other, upon which the parties have agreed, or are to agree, and such an agreement can have no place in a negotiable instrument" (italics supplied).

Our review of the reported cases, including many not noted above, would seem to show that the conclusion in most cases is made to depend upon the collocation of the reference clause with a particular part of the note and its relation thereto. If it is so placed in relation to the promise to pay as to clearly qualify that promise by subjecting it to the terms of some other contract referred to, negotiability is denied. This was obviously the view of the majority in the Louisiana case, supra, viz., that the words "as per contract," etc., related to and qualified, not its immediate antecedent "value received," but the promise to pay; the whole being a single sentence in unbroken sequence. Conceding, without affirming, the correctness of that construction, the decision would seem to be correct.

Thus the question presented is one primarily of construction of the terms of the instrument.

In the instant case, the reference clause is separate and distinct from the rest of the note. Its intended application cannot be determined with any reasonable degree of certainty. There is nothing to show that it was intended to qualify the promise to pay rather than to explain merely the occasion or the circumstances of its execution. Its detachment, both physically and grammatically, from the essential parts of the note, would seem, however, to invite, as more rational, the conjecture that it was merely an explanation of the note as a whole—a memorandum to identify it by connecting its execution with an existing agreement "as per", that is, in accordance with, or pursuant to, which it was made. We do not think this memorandum can be construed as qualifying the promise to pay, and the authorities are numerous and practically harmonious to the proposition that the mere knowledge by an indorsee of negotiable paper that it was founded upon an executory contract, the breach of which may avoid the obligation as be-

tween the original parties, is not notice of an infirmity which will alter his status as a holder in due course. 7 Cyc. 948; 8 Corp. Jur. 121, § 213; Miller v. Ottaway, 81 Mich. 196, 45 N. W. 665, 8 L. R. A. 428, 21 Am. St. Rep. 513, and authorities cited. The questions of qualification of the promise to pay, and of mere notice of a collateral contract which may affect the obligation to pay, are separate and distinct, and not to be confused.

It results from the foregoing considerations that the notes sued on must be regarded as negotiable instruments upon which the plaintiff, as a holder in due course is entitled to recover, and the judgment must be affirmed.

Affirmed.

SAYRE, GARDNER, and BROWN, JJ., concur.

ANDERSON, C. J., and THOMAS, J., dissent.

McCLELLAN, J. (dissenting). The original notes, the negotiable or nonnegotiable character of which is a controlling inquiry on this appeal, are certified to this court for its inspection. They are on printed forms, the date, maturity, and amount being filled in in handwriting. On the lower left-hand side of the face of the paper, opposite the signature, these words are written in in ink, in the same handwriting and ink making the signature to the notes: "As per contract."

To my mind, the opinion of Monroe, C. J., in Continental Bank & Trust Co. v. Times Pub. Co., 142 La. 209, 76 South. pp. 614, 617, L. R. A. 1918B, 632—a deliverance in immediate point—demonstrates the fact that the quoted words on these notes operated to destroy their negotiability. I shall not attempt to reiterate what that able jurist has so forcefully expressed.

The majority of this court makes material to their view the place on the notes where the quoted phrase was written; this notwith-standing it has been long decided by this court, as well as generally elsewhere, that matter indorsed on a note, even in the margin, becomes a part of the instrument "as much so as if it had been set forth in the body of the instrument." Seymour v. Farquhar, 93 Ala. 292, 8 South. 466; Sacred Heart Church v. Manson, 203 Ala. 256, 82 South. 498, 499, and other authorities therein cited. If this established doctrine is accorded appropriate deserved effect in this instance, a material consideration on which the majority predicated their conclusion would be removed. I see no reason to deny this rule's effect in the circumstances here involved.

Code, § 4974 (section 17 of the Uniform Negotiable Instruments Law) provides, through subdivision 4:

"Where there is conflict between the written and the printed provisions of the instrument, the written provisions prevail."

Unless it can be held that the written words "as per contract" are denied any effect whatsoever, they institute a conflict with the printed words (in the form here used) manifesting an unqualified "promise to pay to the order of" the payee. It is not to be supposed, much less assumed, that this phrase "as per contract" was written on the instrument without purpose or effect.