Syllabus.

CONTINENTAL GUARANTY CORPORATION, a corporation of the State of New York, *vs*. PEOPLES BUS LINE., ET AL.

1. BILLS AND NOTES—RECITAL OF EXTRANEOUS MATTER IN NOTE HELD NOT TO RENDER IT NONNEGOTIABLE.

   A recital in a note that it was given covering deferred installments under conditional sales contract for motor vehicle does not render it nonnegotiable under Uniform Negotiable Instruments Act (*Rev. Code* 1915, §§ 2646, 2647, 2649, 2650), and suit may properly be brought in the name of the indorsee thereof.

2. SALES—CONDITIONAL SALES AGREEMENT PROVIDING FOR THE PAYMENT OF DEFICIENCY HELD ENFORCEABLE.

   A sales agreement as to a motor vehicle providing that in default of payment seller could recover and sell it and apply the proceeds on the balance due on the note given by the terms of the agreement and expressly providing that the buyer would pay any deficiency is enforceable.

3. SALES—REPLEVIN AND SALE UNDER CONDITIONAL SALES AGREEMENT HELD NOT INCONSISTENT WITH SUIT FOR BALANCE DUE.

   Under conditional sales contract as to motor vehicles providing that in case of default seller could recover and sell it and apply the proceeds on the balance due, and expressly providing that the buyer would pay any deficiency, a replevin and sale of the motor vehicle by the seller did not elect a remedy inconsistent with his action to recover the balance due on the note, under Uniform Conditional Sales Act, §§ 13, 19, 20, 24.

4. ASSIGNMENTS—NOT UNDER SEAL NOR WITNESSED SUFFICIENT UNDER COMMON LAW.

   The principles of equity treating assignee of contract as succeeding to all rights of assignor formed a part of the common law of England adopted at the time of the Revolution, and the assignment of an express agreement for the sale of a motor vehicle not under seal not assigned in the presence of witnesses was properly assigned in accordance with the common law, and suit thereon was proper in the name of the assignee.

(*March* 30, 1922.)

PENNEWILL, C. J., RICHARDS AND RODNEY, J. J., sitting.

*Herbert H. Ward, Sr.*, and *Frank L. Speakman* for plaintiff.

*David J. Reinhardt* and *P. Warren Green* for defendants.

Superior Court for New Castle County, January Term, 1922.

CASE stated, No. 18, September Term, 1921.

Actions by Continental Guaranty Corporation, a corporation of the State of New York, against People's Bus Line, Inc., et al., in seven cases; the first, a repelvin suit, the remaining six, against indorsers of promissory notes which accompanied the contract for the purchase of motor vehicles in question.

The cases were all heard together on an agreed statement of facts. A brief summary of the facts is as follows: That at certain specified times in December, 1919, March, 1920, and May, 1920, the People's Bus Line entered into seven written contracts for the purchase of seven motor vehicles from the Delaware Motor Tansportation Company; that each of the contracts by its terms provided that the purchaser should give to the seller a promissory note as evidence of the amount due on the installments to be paid under the contract. The six individual defendants were the indorsers on the notes, Richard F. Cross, one of the individual defendants, having indorsed two of said notes, all of the indorsements having been made prior to the delivery thereof; that prior to the maturity of the said notes all of the contracts were assigned by indorsements on the back thereof, and all of the notes indorsed by the Delaware Motor Transportation Company to the Continental Guaranty Corporation, the plaintiff in these suits. Default having been made in the payments prescribed in said contracts and in said notes, a writ of replevin was sued out on May 18, 1921, by the Continental Guaranty Corporation against the People's Bus Line, Inc. Under this writ, the sheriff replevined and delivered five of the motor vehicles and a motor bus body, being a portion of one of the remaining vehicles. The seventh motor bus was not recovered in the replevin suit. After the delivery of the chattels by the sheriff under the replevin process, the present plaintiff retained them more than ten days, and the People's Bus Line not having redeemed them, the plaintiff sold them at public auction, after giving the notices prescribed in sections 19 and 20 of *chapter* 192, *vol.* 30, *Laws of Delaware*, known as the Uniform Conditional Sales Act, the buyer not having at the time of the default paid 50 per cent. of the purchase price. The entire amounts obtained for the chattels on this resale was applied on account of the balances due under the respective contracts and notes

RODNEY, J., delivering the opinion of the court:

Three important questions are presented to and urged upon this court:

1.   Are the notes sued upon in this action negotiable instruments within the meaning of the laws of this state and particularly of the Uniform Negotiable Instruments Act so as to allow suits thereon in the name of the endorsee of the said notes?

2.   Has the present plaintiff by an election of inconsistent remedies, namely, the recovery of the motor vehicles by replevin process, estopped itself from a recovery on the notes from the indorsers thereof, even for the deficiency shown after crediting the proceeds of the resale of the chattels to the amounts shown to be due upon the notes?

3.   Can these suits be maintained by the present plaintiff which is the assignee of the contracts and the assignee or indorsee of the notes mentioned in the agreed statement of facts, under *section* 2627 of the *Revised Code* of 1915, the assignments not being under seal and not being made in the presence of a witness, even if aided by chapter 228, *vol.* 30, *Laws of Delaware?*

This arrangement of the questions involved has been selected because it is admitted by the defendants that if it is determined that the notes sued upon are negotiable, that in that case the statutes of this state make it proper to bring the suit in the name of the present plaintiff, and since this court is of the opinion that the notes involved in this suit are negotiable, such determination makes the consideration of the second question unnecessary in respect to the suits on the notes.

Each of the notes sued upon in this action is for a definite sum payable by installments, a schedule of the times and amounts of the payments being set out on the face of the notes; each note is under seal, and each provides that upon the failure to pay any installment when the same falls due that the entire amount shall become due and payable forthwith at the election of the holder of the note and contains a warrant of attorney for the entry of judgment; each note also bears the following memorandum printed on the face of the note:

"This note is given covering deferred installments under conditional sale contract for a motor vehicle."

It is insisted that these facts and especially the memorandum

printed on said note make the notes and contracts together the agreement of the parties and that the notes in themselves are not negotiable.

The Uniform Negotiable Instruments Act as published in the *Revised Code* of 1915 (*sections* 2645-2842) furnishes in itself a sufficient answer to many of the suggestions made. *Section* 2646 provides that a sum payable is a sum certain within the meaning of the act, even though it is payable by installments coupled with a provision that upon default of any installment the whole shall become due.

Under *section* 2650 the negotiable character of the instrument is not affected by the fact that it bears a seal, nor under *section* 2649 by the fact that it authorizes a confession of judgement.

*Section* 2647 provides that—

"An unqualified order or promise is unconditional within the meaning of this chapter, although coupled with * * * (2) A Statement of the transaction which gives rise to the instrument."

It is contended that under this provision the words, "This note is given covering deferred installments under conditional sale contract for a motor vehicle," as found in the note, do not destroy its negotiability. The words quoted from the Uniform Negotiable Instruments Act were ably treated and the purpose of their inclusion set out in the Ames-Brewster discussion of the act found in the appendix to Brannan's Negotiable Instruments Act. They were copied almost verbatim from the English Bills of Exchange Act and it has been held that they were merely declaratory of the old law merchant. *Strand Amusement Co. v. Fox,* 205 *Ala.* 183, 87 *South.* 332, 14 *A. L. R.* 1121. Regardless of the origin of the section it is undoubtedly the law that the question as to whether a reference in an otherwise negotiable note to some extraneous writing or agreement renders the note non-negotiable is to be determined by the test of whether the reference subjects the note itself to the terms of the extraneous agreement or whether the words refer merely to the consideration or origin of the transaction. In the first case the negotiability is destroyed; in the second case it is preserved.

In 3 *R. C. L.* §69, *p.* 883, it is said:

"It may be stated as the general rule that whenever a bill of exhange or promissory note contains a reference to some extrinsic contract in such a way as to make it subject to the terms of that contract as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction, or constitutes the consideration of the bill or note, the negotiability of the paper is destroyed."

But the same work at *section* 112, *p.* 918, holds that:

"The negotiability of a note is not affected by a reference which is simply a recital of the consideration for which the paper was given, or a statement of the origin of the transaction or by a statement that it is given in accordance with the terms of a contract of even date between the same parties."

In determining whether or not a reference in a note to an extraneous writing renders the note nonnegotiable, the court is, of course, confined to its examination of the note itself and cannot look to the provisions of the extraneous writing for assistance. It is the negotiability of the note and not of the extraneous writing which is being determined. *Waterbury-Wallace Co. v. Ivey,* 99 *Misc. Rep.* 260, 163 *N. Y. Supp.* 719. See also, *Kennedy v. Murdick,* 5 *Harr.* 263; *Barvarian Brewing Co. v. Retkowski* (*Del. Super.*) 113 *Atl.* 903; *Supra, p.* 225.

In *Waterbury-Wallace Co. v. Ivey, supra,* the court held that the words "as per contract of Nov. 12, 1915," as found in the note, did not make the note nonnegotiable.

In *Strand Amusement Co. v. Fox,* 205 *Ala.* 183, 87 *South.* 332, 14 *A. L. R.* 1121, it was held that the words "as per contract" on the face of a promissory note did not destroy its negotiability.

In *Doyle v. Considine,* 195 *Ill. App.* 311, it was held that the negotiability of a note was not affected by a memorandum that "this note is given in accordance with a land contract of even date."

In *Slaughter v. Bank of Bisbee* (1916) 17 *Ariz.* 484, 154 *Pac.* 1040, a reference made in a note after the signature thereto that it was "for payment under contract of even date" is held not to render the note nonnegotiable.

It was held in *National Bank of Newbury v. Wentworth,* 218 *Mass.* 30, 105 *N. E.* 626, that the words "as per terms of contract" in a promissory note did not destroy the negotiability of the note

or make its payment conditional upon the performance of the contract referred to, although the court felt if the words had been "subject to the contract for lumber" or "subject to the contract," the note would have been made nonnegotiable.

In *Coleman v. Valentin,* 39 *S. D.* 323, 164 *N. W.* 67, it was held that the words, "This is one of a series of notes given in payment of land described in a contract this day executed" in a promissory note did not render the note nonnegotiable; that the recital that a note is given for part of the purchase price of a tract of land does not destroy the negotiability.

[1]   In the present case the words, "This note is given covering deferred installments under conditional sale contract for a motor vehicle," seem to fall within the general rule, and the cases holding that the negotiability of the notes is not destroyed. The court is therefore of the opinion that the notes sued upon are negotiable, and, this being true, it follows that the suit is properly brought in the names of the present plaintiff, the indorsee of the notes in question.

[2]   2. The defendants insist that the plaintiff by the retaking of the motor cars by replevin in six of the cases covered by the agreed statement of facts has elected one of its available remedies and is barred from recovering from the defendant, the indorsers on the notes given for the purchase price, the balance admitted to be due on said notes. In support of this contention the defendants have cited many cases which at first would seem to support their contention, but a careful anaylsis would seem to render them inapplicable. There is considerable variety in the form of conditional sales contracts, and the Uniform Act passed in 1919 does not deprive the parties themselves of the right as between themselves and those in privity with them from contracting by various terms. Where the agreement is in form of a lease and provides that the payments shall represent rentals and upon a default by the purchaser the seller shall recover possession of the chattel and hold the accrued payments as rentals, the courts have properly held that the retaking of the property relieves the purchaser from the unpaid balance of the purchase price.

Where, however, as in the present case, the agreement provides that upon default by the buyer the seller may recover the chattel, sell the same and apply the proceeds of sale to the indebtedness, and expressly provides' 'in case of a deficiency, purchaser covenants to pay the same  forthwith to holder of said note," we fail to see why this agreement should not be carried out. It is aptly said in *White v. Soloman,* 164 *Mass.* 516, 42 *N. E.* 104, 30 *L. R. A.* 537, by Justice Holmes now of the United States Supreme Court:

"We are not to construe equities into the contract, but to carry it out as the parties were content to make it.   If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum."

In certain states such as Minnesota and Arkansas the courts have held that after the seller has retaken the chattel and sold the same for the default of the buyer that thereafter the buyer cannot be held to pay any deficiency arising from such resale.  *Keystone Mfg. Co. v. Cassellius,* 74 *Minn.* 115, 76 *N. W.* 1028; *Nashville Lumber Co. v. Robinson,* 91 *Ark.*  319, 121 *S. W.* 350.

These cases seem largely to have been decided upon the theory that the actual promise to pay and the implied obligation to transfer title were mutual and that upon the failure of one  the  other was discharged.

We think the greater weight of authority and the better reasoning support the doctrine that if the vendee sees fit to enter into a contract by or under which he provides upon his default that the vendor may retake possession, sell the chattel and apply the proceeds to the vendee's debt and further agrees to pay any deficiency that may be due, that it is the duty of the courts to enforce this contract as it is written.   The following cases fully sustain this view:  *Gaar Scott Co. v. Mitchell,* 1 *D. L. R.* 283; *McCormick Harvesting Machine Co. v. Koch,* 8 *Okla.* 374, 58 *Pac.* 626; *Warner v. Zuechel,* 19 *App. Div.* 494, 46 *N. Y. Supp.* 569; *International Harvester Co. v. Bauer,* 82 *Ore.* 686, 162 *Pac.* 856; *First National Bank of Sheridan v. Yocom,* 96 *Ore.* 438, 189 *Pac.* 220; *Christie v. Scott,* 77 *Kan.* 257, 94 *Pac.* 214;  *Van Den Bosch v. Bouwman,* 138 *Mich.*

624, 101 *N. W.* 832, 110 *Am. St. Rep.* 336; *McPherson. v. Acme Co.*, 70 *Miss.* 649, 12 *South.* 857; *Dederick v. Wolfe*, 68 *Miss.* 500, 9 *South.* 350, 24 *Am. St. Rep.* 283.

[3]    We feel, therefore, that the plaintiff by his action in recovering the motor vehicles by replevin process has not elected a remedy inconsistent with his action in recovering the balance due on the notes unless the Uniform Conditional Sales Act compels such conclusion.

*Section* 13 of the act clearly indicates that the reservation of title by the vendor is in the nature of security and not as absolute owner.   By *section* 13 the vendee can sell, mortgage or dispose of his interest in the chattel, the notice provided for in said section being solely for the purpose of bringing knowledge to the vendor of the person with whom he has to deal, consent by the vendor not being a requisite.   In the present cases 50 per cent. of the purchase price had not been paid in any instance, and resale by the vendor after the recovery by replevin process was not compulsory under sections 19 and 20.   If, however, no resale had been made, the vendor could have retained the property and the vendee would have been discharged of all obligation under *section* 23.

*Section* 20 provides that while the resale is not compulsory "the seller may voluntarily resell the goods for account of the buyer on compliance with the same requirements.   The seller acted under this provision and the sale was, therefore, made "for account of the buyer."   *Section* 21 then governs the application of the proceeds of the resale and *section* 22 provides that where the proceeds have not been sufficient to meet the balance of the purchase price "the seller may recover the deficiency from the buyer, or from any one who has succeeded to the obligations of the buyer." This is the purpose of these suits, is in compliance with the terms of the statute and in conformity with the expressed intention of the parties themselves.

*Section* 24 in no way restricts this conclusion, but merely restricts the liability of the buyer or indorser, as, in this case, to the deficiency as shown after the resale.   We feel that the action of the plaintiff has been in full conformity with the statute.

All that we have said has reference to the cases No. 273, 274 275, 276 and 277, in which cases the motor vehicles had been recovered in replevin proceedings, resold and the proceeds applied to the balance due on original purchase prices.   In all of these cases we are of the opinion that judgments should be entered in favor of the plaintiff for the respective amounts admitted to be due in the agreed statement of facts.   In the case No. 272, the motor vehicle for which the note was given was not recovered in the replevin proceeding and consequently there was no resale and the suit is for the balance due on the note after crediting only the sums paid on account thereof.   We see no distinction in principle between this and the foregoing cases.   *Section* 24 of the Uniform Act provides that, after retaking the possession by the seller, the buyer shall be liable for the deficiency only after a resale.   This limitation of libility is, however, predicated upon the "retaking of possession" by the seller.   An abortive attempt at repossession, a replevin suit with no recovery, is not in our opinion a retaking of possession contemplated by the act.   The underlying principle is that the seller may not retain the chattel after the retaking and still sue for the balance.   If he does not recover the possession, he may sue for the balance due.

[4] 3. The remaining case, No. 278, is a replevin case by the *Continental Guaranty Co. v. People's Bus Line.*   This does not involve consideration of the promissory notes which have been held to be negotiable, but simply the propiety of the suit being brought by the present plaintiff as assignee of the contracts for the purchase of the motor vehicles.   *Section* 2627 of the *Revised Code* of 1915 provides for the assignment of bonds or specialties providing the assignment shall be under hand and seal before at least one credible witness.   *Chapter* 28, *vol.* 30, *Laws of Delaware* 1919, provides:

"A person to whom a contract, express or implied, has been transferred or assigned, either in accordance with a statute or with the common law, may sue thereon in his own name."

The assignment of the contracts in question were not under seal nor were they assigned in the presence of any witness.   At the hearing no argument was made as to the propriety of the replevin

suit, but on the briefs, it is argued that *chapter* 228, *vol..* 30 furnishes no ground for the bringing of the suit, in the name of the assignee because, it is argued, the right is given only in case a contract has been transferred or assigned either in accordance with a statute or with the common law, and since we have no statute providing for the assignment of contracts and since contracts were not assignable at the common law, the provisions of *chapter* 228 of *volume* 30 are nugatory.

We cannot agree with this contention. It is, of course, true that in the earliest stages of the common law an assignment conveyed no right to the assignee. In process of time this was changed however, and even at law the assignee was acknowledged to have an interest which, however, he must enforce in the name of the assignor. Equity, however, even in the earlier stages of the development, treated the assignee as succeeding to all the right and title of the assignor and permitted him to maintain the proper suit in his own name. This equitable principle was firmly established prior to the separation of the American Colonies from Great Britain. When, therefore, the Constitution of Delaware, adopted September 20, 1776 by article 25 provided:

"That the common law of England as well as so much of the statute law as has been heretofore adopted in practice in this state, shall remain in force, unless they shall be altered by a future law of the Legislature; such parts only excepted as are repugnant to the rights and privileges contained in this Constitution, and the Declaration of Rights."

it provided for the continuance of the equitable remedy of assignees. This equitable right to make assignments was as much a part of the common law as any other provision—its enforcement only was in equity.

"The common law," says Blackstone, book 1, p. 67, "is that law by which the proceedings and determinations in the king's ordinary courts of justice are guided and directed."

And says Chancellor Saulsbury in *Hulley v. Security Trust & Safe Deposit Co.*, 5 *Del. Ch*, at *page* 589:

"This is the meaning of the 'common law,' I apprehend, as used in article 25 of our first Constitution."

It is indeed difficult to understand what, if any, portion of our jurisprudence would not be derived "from statute or from the common law." It would seem that these two sources embrace and include every justiciable right or remedy, every wellspring from which our law traces its origin, and when the Legislature provides that every person to whom a contract has been assigned "either in accordance with a statute or with the common law may sue thereon in his own name" it meant by every method of assignment known to our law.

We are of the opinion that the principles of equity formed a part of the common law adopted at the time of the Revolution. These principles as administered in Great Britain were never intended to create a new law but were introduced for the purpose of assisting and giving effect to the general laws of the realm. Equity follows the law, but does not control it. The office of equity is to support the common law and carry it into practical effect. When we adopted the common law of England, we adopted it as an entire system so far as it was adapted to the circumstances of our people and the principles of equity as administered in England constituted a part of the common law for the purpose of giving a practical effect to it. The principles of equity as in force in Great Britain at the time of the separation were as necessary to give complete efficacy, in 1776, to the common law in what is now the state of Delaware as they were in that country from which the common law itself was derived. This would seem to be the almost uniform construction. 5 *R. C. L.* 816; 12 *C. J.* 183; *Pennock's Estate*, 20 *Pa.* 268, 59 *Am. Dec.* 718; *Bloomfield State Bank v. Miller*, 55 *Neb.* 243, 75 *N. W.* 569, 44 *L. R. A.* 387, 70 *Am. St. Rep.* 381; *State v. Saunders*, 66 *N. H.* 39, 25 *Atl.* 588, 18 *L. R. A.* 645; *Beall v. Fox's, Ex'rs*, 4 *Ga.* 403.

We are of the opinion, therefore, that in this case the express contract was assigned in accordance with the common law and that, therefore, the suit was proper in the name of the assignee. We think this the reasonable construction of the amendatory act, having in mind the situation of the law before its passage and the very evident end sought to be attained by it.

Judgments should therefore be entered in favor of Continental Guaranty Corporation, the plaintiff, and against the following defendants, respectively, being the amounts admitted to be due under the agreed statement of facts: Alfred M. Tonnele, $1,006.68 with interest from November 13, 1920. William H. Banning, $1,700.16, with interest from September 18, 1920. Frank Kessler, $2,062.18, with interest from November 30, 1920. John W. Stocktill, $1,563.18, with interest from December 30, 1920. Benjamin A. Groves, $1,963.18, with interest from November 30, 1920. Richard F. Cross, $3,699.78, with interest from November 17, 1920. People's Bus Line, Incorporated, for 6 cents.